**Russell Isom CHISUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00172–CR.**

Court of Appeals of Texas,
Texarkana.

Argued Nov. 3, 1998.

Decided Nov. 19, 1998.

Rehearing Overruled Jan. 12, 1999.

Discretionary Review Refused
May 12, 1999.

---

Gaylyn Leon Cooper, H. Scott Alexander, Bernsen, Jamail, & Goodson, Beaumont, for appellant.

Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Russell Chisum appeals from his conviction for possession of a controlled substance. He contends that the evidence was legally and factually insufficient to convict and that the court abused its discretion by admitting expert testimony over his objection, by denying his request to voir dire the expert outside the presence of the jury, and by refusing to permit him to reopen and admit a "Trial Procedure Order" into evidence.

Chisum was arrested at his home and charged with possession of between four and 200 grams of cocaine. The cocaine was found during a search of his home and pickup truck. He was convicted in a jury trial, and the jury assessed punishment at forty years' imprisonment and a $5,000.00 fine.

In reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Webb v. State*, 801 S.W.2d 529, 530 (Tex.Crim.App.1990). If we determine that the evidence was legally sufficient, we then review factual sufficiency, reviewing all of the evidence without the prism of "in the light most favorable to the prosecution." We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

A person may not be convicted of possession of a controlled substance unless there is sufficient evidence to raise a reasonable inference that the person knew of the contraband's existence and exercised actual care, custody, control, or management over it. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992); *Kyte v. State*, 944 S.W.2d 29, 31–32 (Tex.App.-Texarkana 1997, no pet.); *Fields v. State*, 932 S.W.2d 97, 103 (Tex.App.-Tyler 1996, pet. ref'd).

A defendant charged with intentionally and knowingly possessing drugs must be affirmatively linked with the drugs he allegedly possessed. *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App.1995). Possession and control of drugs need not be exclusive but may be joint. *White v. State*, 890 S.W.2d 131, 138 (Tex.App.-Texarkana 1994, pet. ref'd) (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986)). "[W]hen an accused is not in *exclusive* possession of the *place* where the contraband is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Cude*, 716 S.W.2d at 47; *Ebert v. State*, 848 S.W.2d 261, 266 (Tex.App.-Corpus Christi 1993, no pet.).

In this case, the evidence shows that Chisum owns the house in which the drugs were found, but also shows that a woman was or had been very recently living there. The officer who conducted the search testified about the large amount of women's clothing found in one of the bedrooms and testified that he was aware that a woman had been living with Chisum, but that he did not know her name. Thus, it is clear that Chisum was not in exclusive possession of the house at

the time of the search, and we may not conclude that he had knowledge and control over the contraband unless additional independent facts and circumstances affirmatively link him to the contraband. *Brazier v. State*, 748 S.W.2d 505, 508 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd).

■ Factors to be considered when evaluating affirmative links include: 1) the defendant's presence when the search was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the contraband; 4) whether the defendant was under the influence of a controlled substance when arrested; 5) whether the defendant possessed other contraband when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether the defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. *Green v. State*, 892 S.W.2d 220, 222 (Tex.App.-Texarkana 1995, pet. ref'd).

The record shows the following circumstances concerning the search of Chisum's premises and his connection to the contraband: (1) Chisum was not present when the warrant was executed, but was brought to the premises while the search was in progress; (2) the contraband was not in plain view, but was hidden in Marlboro cigarette boxes in a utility closet; (3) Chisum was not found close to the contraband; (4) Chisum was not "under the influence" when arrested; (5) Chisum had no contraband on his person; (6) Chisum stated at the time of his arrest that the cigarette boxes of contraband did not belong to him, but that they belonged to his brother Eugene and that his brother made him sell them; (7) Chisum did not attempt to flee; (8) Chisum made no furtive gestures; (9) there was no odor of the contraband; (10) there is no evidence about other types of contraband or drug paraphernalia; (11) Chisum both owned and had the

right to possess the house; and (12) the contraband was found in an enclosed place.

■ At trial, Chisum testified that he permitted Angela Schmidt and her two children to live with him for a short time, and that he had caught her using cocaine and threw her out of the house. He testified that he took her key, but she was able to return to the house by using a duplicate key. He testified that she smoked Marlboro Light cigarettes. Most of the cocaine found during the search was packaged in Marlboro Light cigarette boxes. Chisum contends that Schmidt was angry with him for throwing her out of the house, planted the contraband on his premises, and then acted as an informant and told the police that the cocaine was in his house. There is also testimony that Chisum directed the officers to another cigarette package containing cocaine that was in an old pickup truck in his driveway.

In summary, the evidence shows that Chisum owned the house and was living there, that he was aware that the contraband was in the house, and that he admitted selling it for his brother. When viewed in the light most favorable to the verdict, these affirmative links make the evidence legally sufficient to support the verdict. When viewed without the prism of "in the light most favorable to the State," the evidence that might exonerate Chisum does not rise to such a level as to permit this Court to find that the conviction is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The evidence is factually sufficient to support his conviction.

Chisum contends that the court abused its discretion by admitting expert testimony about the nature of the alleged contraband over his objection and also by refusing his request to voir dire the expert outside the presence of the jury. The State presented the testimony of Charleen Voight as an expert to prove the weight and chemical composition of the substances recovered from the house and pickup truck. Chisum argues here as he did at trial that the State failed to make the necessary Rule 702 showing that would permit the admission of scientific expert testimony as is required by the United States Supreme Court in *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[1]

■ In *Jordan v. State*, 928 S.W.2d 550 (Tex.Crim.App.1996), the Texas Court of Criminal Appeals explicitly adopted the *Daubert* standards applying Rule of Evidence 702.[2] In *Jordan*, it was noted that before the Supreme Court wrote *Daubert*, the Texas Court of Criminal Appeals had already adopted the same requirements, in virtually the same language, in *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992).[3] The court also stated in *Kelly* that the decision as to whether these requirements have been met should be made outside the presence of the jury before the evidence is admitted. *Kelly*, 824 S.W.2d at 573.

In this case, counsel for Chisum filed a pretrial motion requesting the court to conduct a hearing to qualify expert witnesses pursuant to Rules 702 and 703 and urged the request again during trial, before Voight testified. The trial court denied Chisum's requests, and he was then forced to make his challenge to the witness' expertise and the scientific basis of her tests on voir dire examination in the presence of the jury. Counsel then argued on *Daubert* grounds that the State had not met its burden of proving the reliability of the scientific evidence used to establish that the confiscated substance was cocaine.

The trial court erred by refusing to hold the gatekeeper hearing as requested and as required by *Kelly/Daubert*. The remaining question is whether harm is shown by this error, requiring reversal.

■ The trial court's task in assessing admissibility under Rule 702 at the gatekeeper hearing is to determine whether the scientific evidence is both sufficiently reliable and relevant to help the jury in reaching accurate results. *Hartman v. State*, 946 S.W.2d 60, 62–63 (Tex.Crim.App.1997).

■ In determining reliability, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied. *Id.* at 62 (citing *Kelly*, 824 S.W.2d at 573). The Texas Court of Criminal Appeals has also provided a list of nonexclusive factors that could affect a trial court's determination of reliability. *Kelly*, 824 S.W.2d at 573. One of those factors is the expertise and knowledge of the witness who is explaining the conceptual underpinning and proper application of the scientific principles involved. The court concluded that unreliable scientific evidence simply will not assist the jury to understand the evidence or accurately determine a fact in issue.[4]

1. Rule 702 reads as follows:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
   Tex.R. Evid. 702.

2. The State complained on appeal that Chisum referred to "Tex.R.Crim. P. 702" rather than to Tex.R. Evid. 702, suggesting that some unfairness resulted. Chisum's reference to the rules of criminal procedure was in the context of discussing the admission of expert testimony under "Rule 702." It is obvious that Chisum intended a reference to the rules of evidence and not to the rules of procedure. Briefing rules are to be construed liberally. Tex.R.App. P. 38.9. We do not find that Chisum waived his alleged error, or that the State was misled to its prejudice, by his mistake.

3. *See generally Hartman v. State*, 946 S.W.2d 60 (Tex.Crim.App.1997) (applying those cases, discussing the history of the rule, and flatly reiterating its prior holdings that the analysis does not just apply to novel scientific theories).

4. Under Tex.R. Evid. 104(a) and (c) and Tex.R. Evid. 702, all three criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted. Factors that could affect a trial court's determination of reliability include, but are not limited to, the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

■ Thus, the expert must be qualified, the proposed testimony must be scientific, technical, or otherwise specialized knowledge, and it must be useful to the trier of fact in reaching a decision. *Fowler v. State,* 958 S.W.2d 853, 860 (Tex.App.-Waco 1997, pet. granted).

■ In this case, Voight testified in response to the State's questions that she was a forensic analyst (drug chemist), that she had a Bachelor of Science degree in chemistry, and that she had extensive on-the-job training in determining the identity of unknown substances. The State elicited no testimony about the scientific basis of the test, its reliability, or the question of whether it was properly applied. Thus, the State did not meet its burden to provide the trial court with evidence from which it could exercise its gatekeeping function and decide whether the scientific basis of the evidence was sufficiently reliable and relevant to justify admitting it before the jury.

When the State asked the chemist to identify the contents of the baggies, however, defense counsel took the witness on voir dire and questioned her about her level of knowledge. She testified that she used an infrared spectrometer to determine the reaction of the substance to the light, and then matched the spectra of the test item to the known spectral analysis of other items through the use of a library of known samples. She testified that she had taken several college classes that involved the use of such spectral analysis and that she had read articles and a manual that went with the machine about the subject. She testified that she had not personally authored any materials or done any research in the area. She was not able to provide any information about any "potential rate of error" in the tests, but then stated that, because of the type of test involved, there was no question of a rate of error: "Either the spectrum matches or it doesn't." Following this voir dire examination, the witness was permitted to testify about the results of her tests.

■ Voight's testimony concerning her qualifications was adequate to prove that she had the ability and knowledge necessary to conduct the analysis. Chisum did not attack the theory behind the type of analysis, and Voight testified as to its validity. There were no questions raised about the existence of literature attacking the accuracy of spectral analysis. The witness explained the nature of the test with reasonable clarity and explained her training in the technique.

■ Based upon her testimony, a sufficient foundation was provided to show that the evidence was based upon a valid scientific theory, that the technique was valid, and that she had the expertise to properly apply it and did so on this occasion. *See generally Aguilar v. State,* 980 S.W.2d 824 (Tex.App.-San Antonio, 1998, no pet. h.) (reviewing DNA testimony over a similar objection, holding that a failure to hold hearing outside presence of jury did not reflect harm and declining request to state that the validity of the theory and technique were reliable as a matter of law).[5]

Even though the trial court committed error in denying Chisum's request to conduct a hearing to qualify expert witnesses and his request to voir dire Voight outside the presence of the jury, the testimony provided by Voight on both direct and voir dire examination was adequate to properly permit her to testify to the jury about the results of her scientific tests. Under the requisite abuse of discretion standard of review, we cannot conclude that the admission of this evidence constituted an abuse of discretion.

■ We further note that, when Chisum completed his voir dire examination of this witness, he objected to the admission of the expert's opinions, but he did not specify any particular deficiency in her qualifications or the reliability of her expert opinions. The general contention that the evidence is inadmissible, without more detail, does not adequately inform the trial judge of any complaint upon which he might rule. Thus, no

---

5. We further recognize that our review of the admission of expert testimony is subject only to an abuse of discretion review. *Gammill v. Jack Williams Chevrolet, Inc.,* 41 Tex. Sup.Ct. J. 1117, 972 S.W.2d 713 (1998); *Brown v. State,* 881 S.W.2d 582, 588 (Tex.App.-Corpus Christi 1994, no pet.).

specific complaint about the relevancy or reliability of the scientific evidence was preserved for appellate review. Tex.R.App. P. 33.1.[6]

Since the errors cited above are not constitutional errors, we apply Tex. R.App. P. 44.2(b) in assessing the harm caused by these errors. *See Fowler,* 958 S.W.2d at 864–66. Thus, we must determine whether the errors affected the substantial rights of the accused. A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In this case, the court made one error of law and one error in procedure. Even though the court's error of law improperly relieved the State of its burden to show that the evidence was admissible, we have concluded that sufficient evidence was presented to support the admission of the scientific evidence at trial. Thus, the evidence itself was properly before the jury, and the error of law did not affect a substantial right of the accused.

Further, even though the failure to hold the initial hearing outside the presence of the jury was error, because this admissible evidence was ultimately placed before the jury, there is no harm resulting from the error. *See Brown v. State,* 881 S.W.2d 582, 588 (Tex.App.-Corpus Christi 1994, no pet.).[7]

Chisum next contends that the trial court abused its discretion by refusing to permit him to reopen the evidence and admit a document entitled "Trial Procedure Order." Chisum argues that because the State referred to his brother Eugene and to Chisum's own statement that he was selling drugs for his brother, and since Eugene was present in the courtroom during the trial, he should have been permitted to explain to the jury why he could not call Eugene as a witness: that being because of the application of the Rule.

The application of "the Rule," however, is subject to judicial discretion, and a violation of the Rule is not necessarily reversible error. *Guerra v. State,* 771 S.W.2d 453, 474 (Tex.Crim.App.1988). A violation of the Rule may not be relied on for reversal of the case unless it is shown that the trial court abused its discretion in allowing the alleged violative testimony to be elicited at trial. *Id.; Cooper v. State,* 578 S.W.2d 401, 403 (Tex. Crim.App. [Panel Op.] 1979) (enforcement of the Rule is within the discretion of the trial court).

Generally, a two-step approach is taken in determining whether a trial court has abused its discretion in allowing a violation of the Rule. *Guerra,* 771 S.W.2d at 476. First, if the witness had no connection with either the State's case in chief or the defendant's case in chief, and because of a lack of personal knowledge regarding the offense was not likely to be called as a witness, no abuse of discretion can be shown by allowing the witness to testify. *Id.* Under the second step, it must be determined whether (1) the witness actually conferred with or heard the testimony of another witness without court permission, and (2) "the witness's testimony contradict[ed] the testimony of a witness he actually heard from the opposing side or corroborate[d] the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence." *Id.* at 475. If both of the above criteria are met, then the trial court abuses its discretion in allowing the witness to testify and reversible error is shown. *Id.* at 475–76; *Loven v. State,* 831 S.W.2d 387, 399 (Tex.App.-Amarillo 1992, no pet.).

In this case, counsel never sought to question the brother at trial, and the trial court thus never had the opportunity to decide whether to permit Eugene to testify. If

---

6. *Compare Hepner v. State,* 966 S.W.2d 153, 159–60 (Tex.App.-Austin 1998, no pet.), where the Austin court held that a broad objection to scientific evidence on the authority of *Kelly* and Rules 403, 702, and 705 did not preserve for appeal complaints that the State did not prove the reliability of that evidence.

7. If the evidence was not properly admissible, the result would likely be different. It is difficult to imagine a case like this where the admission of this kind of scientific evidence, without the proper showing of relevance and reliability, would not affect a substantial right of the accused.

Chisum had called his brother to testify and the court had allowed it, the requested "re-opening" would have been unnecessary. Since the initial step of attempting to call the witness was not taken, we cannot find that the court erred by refusing to allow Chisum to present the jury with information indicating that he was unable to call the witness because of the Rule.

The judgment is affirmed.