

# NUMBER 13-06-00307-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**NORBERTO MANZANARES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 103rd District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Norberto Manzanares*,* guilty of murder. *See* TEX. PENAL

CODE ANN. § 19.02 (Vernon 2003). The trial court assessed punishment at thirty-five years

in prison. Appellant asserts six issues on appeal. We affirm.

### I. BACKGROUND

On the morning of January 31, 2005, appellant crossed into Matamoros, Mexico

from Brownsville, Texas, with his wife, Gloria Manzanares, in his vehicle. The record shows that appellant arrived at a clinic located in Matamoros at approximately 8:15 a.m. Upon his arrival, appellant frantically sought medical assistance for Gloria, who was unconscious and not breathing. Gloria was immediately examined by two medical doctors, and although life-saving measures were implemented, they proved futile; Gloria was declared dead upon arrival. Dr. Guillermo Lozano testified that in his medical opinion, he believed that Gloria had been dead for three or four hours. An autopsy to determine Gloria's cause of death commenced at 10:30 a.m.

Dr. Marco Tulio Maldonado, a forensic medical examiner for the State of Tamulipas, Mexico, performed the autopsy. At trial, Dr. Maldonado first gave detailed testimony about lividity[1] and rigor mortis[2] in order to determine the approximate time of death. He testified that because Gloria showed significant signs of both lividity and rigor mortis, he believed that Gloria must have been dead for at least six or eight hours. Dr. Maldonado also noted various injuries to Gloria's head, scalp, and neck, and concluded the cause of death was anoxemia due to strangulation.

Dr. Norma Jean Farley, a forensic pathologist, performed a second autopsy on February 1, 2005. Dr. Farley also concluded, based on her observations of various injuries on Gloria's head, scalp, and neck, that the cause of death was asphyxia from ligature strangulation. Dr Farley further stated, that based on the initial autopsy done in Mexico, the autopsy that she performed, and various photographs that she reviewed, she believed

---

[1] "Lividity" is the postmortem pooling of the blood in the body due to gravity when the heart no longer pumps blood.

[2] "Rigor mortis" is the stiffening of the joints of the body after death.

2

that Gloria had been dead for approximately six to eight hours at the time Dr. Maldonado began his initial autopsy.

The record shows that authorities from Matamoros and Brownsville worked together while investigating Gloria's death. The results of their investigative efforts indicated that Gloria was strangled with a cord in the early morning hours of January 31, 2005 while at her home located in Brownsville. Appellant was indicted on June 15, 2005. The indictment alleged that "in the County of Cameron and the State of Texas, [appellant] did then and there intentionally or knowingly cause the death of [Gloria Manzanares], by asphyxia due to ligature strangulation with a cord, rope, or object unknown to the Grand Jury." A jury found appellant guilty of Gloria's murder on February 21, 2006. This appeal ensued.

## II. CONFRONTATION CLAUSE

By his first issue, appellant contends that his right to confrontation under the Sixth Amendment to the United States Constitution was violated when the trial court ruled at a pre-trial hearing that a local newspaper reporter did not have to take the witness stand and testify about the sources he used in developing articles on appellant's case. *See* U.S. CONST. AMEND. VI. Apparently, appellant sought to support his motion to change venue with testimony from the reporter that the State was actively promoting publicity in its case against appellant. The Confrontation Clause of the Sixth Amendment guarantees that "in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id*. Clearly, the reporter is not a witness against appellant, nor does he contend as much on appeal. As such, appellant was not denied his right to confrontation or his right of cross-examination. *See Dedeesma v. State*, 806 S.W.2d 928, 933 (Tex. App.–Corpus Christi 1991, pet. ref'd) (citing *Drew v. State*, 743 S.W.2d 207, 225

3

(Tex. Crim. App. 1987)).  Appellant's first issue is overruled.

### III.  MOTION TO CHANGE VENUE

By his second issue, appellant contends the trial court abused its discretion in denying his motion for change of venue due to pretrial publicity.

A change of venue is warranted because of pretrial publicity if "the publicity about the case was pervasive, prejudicial and inflammatory."  *Salazar v. State*, 38 S.W.3d 141, 150 (Tex. Crim. App. 2001); *accord LaBonte v. State*, 99 S.W.3d 801, 805 (Tex. App.–Beaumont 2003, pet. ref'd).  The two primary means of discerning whether publicity is pervasive are a hearing on a motion to change venue and the voir dire process. *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007).  If the accused raises "substantial doubts about obtaining an impartial jury" because of "widespread inflammatory news coverage," the constitutional right to fair trial is implicated.  *Phillips v. State*, 701 S.W.2d 875, 879 (Tex. Crim. App. 1985) (citing *Bell v. State*, 582 S.W.2d 800, 810-11 (Tex. Crim. App. 1979)).

The standard of review on appeal from a trial court's ruling on a motion for change of venue is abuse of discretion.  *Gonzalez,* 222 S.W.3d at 449.  If the trial court's ruling falls within the zone of reasonable disagreement, it will be upheld.  *See id*.; *see also Narvaiz v. State*, 840 S.W.2d 415, 428 (Tex. Crim. App. 1992).

A hearing on appellant's motion for change of venue was held on October 6, 2005. At the hearing, appellant introduced into evidence fifteen newspaper articles that were published over a nine-month period (February 2005 to October 2005).  An affidavit provided by Irma Rubio, an employee of the Brownsville Herald, indicated that at the time the fifteen articles were circulated, the average daily circulation of the Brownsville Herald

4

was 16,368, with an estimated readership of 49,000. Rubio concluded that "because of the number of articles and the said circulation, the said matter received substantial (local) coverage."

Appellant also presented the opinions of two witnesses on the amount of publicity that the case had generated. The first, Amelia Mendez, a teacher with the Brownsville Independent School District, testified that she read only two of the fifteen articles printed by the Brownsville Herald. She further testified that she discussed appellant's case with approximately twenty of her co-workers. Mendez acknowledged, however, that no co-worker ever expressed an opinion as to whether appellant was able to get a fair trial.

The second of appellant's witnesses was Maria Luis Gomez, a social security administration employee and a fifty-three-year resident of Brownsville. Gomez testified she became familiar with appellant's case by watching the news and reading every newspaper article that involved appellant's case. She claimed also to have conversed with approximately twenty-five of her co-workers about the case and that several of them mentioned that they believed appellant was guilty.

With regard to the voir dire process, appellant claims that the trial court's recognition that "a good majority" of the potential jurors had heard or read about the case through different media outlets demonstrated the extent to which pretrial publicity had permeated the community. Although the record does not show the exact number of potential jurors that indicated having had heard or read about appellant's case, the record does show that only three, out of a pool of eighty potential jurors, had formed an opinion about the case that they would not be able to set aside.

We acknowledge the fact that there was extensive media coverage of this case.

5

However, publicity in the news alone will not support a change of venue. *Willingham v. State*, 897 S.W.2d 351, 357 (Tex. Crim. App. 1995). Appellant's witnesses identified a very limited number of citizens who reportedly became aware of appellant's case through the media. Indeed, Mendez testified that she had read only two of the fifteen articles that had been published. Moreover, the fact that only three out of eighty potential jurors expressed the opinion that they could not be fair and impartial jurors does not establish that the pretrial publicity permeated the community to such an extent that the decision to deny the motion for a change of venue was outside the zone of reasonable disagreement.[3]

There is simply nothing in the record to indicate that the trial court failed to consider all of the testimony and physical evidence tendered by appellant at the change of venue hearing. *See Gonzalez*, 222 S.W.3d at 450. The trial court was also permitted to consider the entirety of the responses heard during the voir dire process. *Id*. We find no abuse of discretion by the trial court in denying appellant's motion for change of venue. Appellant has failed to carry his burden of proving the existence of identifiable and pervasive prejudice within the Cameron County community such that the likelihood of obtaining a fair and impartial jury was doubtful. Issue two is overruled.

### IV. EXPERT QUALIFICATIONS

By his third issue, appellant asserts that the trial court abused its discretion by

---

[3] The court of criminal appeals and other appellate courts have found trial courts within their discretion when they seated panels with 69 venire members out of 109 who had seen publicity on the accused's case, *Von Byrd v. State*, 569 S.W.2d 883, 890-91 (Tex. Crim. App. 1978); with 44 out of 72 had seen publicity on the defendant's case, *Russell v. State*, 146 S.W.3d 705, 714 (Tex. App.–Texarkana 2004, pet. ref'd), and with 52 panelists out of 64 had seen something on the defendant's case. *Crawford v. State*, 685 S.W.2d 343, 349-50 (Tex. App. Amarillo 1984), *rev'd on other grounds*, 696 S.W.3d 903 (Tex. Crim. App. 1985). Likewise, the court of criminal appeals has found trial courts within their discretion when they seated juries with 15 venire members out of 77 stated that they had an opinion that could not be set aside, *Gardner v. State*, 733 S.W.2d 195, 204-05 (Tex. Crim. App. 1987), and with 39 out of 112 held the same view. *Taylor v. State*, 420 S.W.2d 601, 604 (Tex. Crim. App. 1967).

permitting Dr. Mario Maldonado to testify as a medical expert regarding the victim's time of death.

We review the trial court's admission of expert testimony for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). Absent a clear abuse of discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000); *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995).

The test for admitting expert testimony is set forth in rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702. The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *Wyatt*, 23 S.W.3d at 28; *Penry*, 903 S.W.2d at 762. No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Matson v. State*, 819 S.W.2d 839, 851-52 n.10 (Tex. Crim. App. 1991). The special knowledge qualifying a particular witness as an expert may be gleaned entirely from studying technical works, obtaining a specialized education, practical experience, or a combination of the three. *Holloway v. State*, 613 S.W.2d 497, 501 (Tex. Crim. App. 1981); *see also Carter v. State*, 5 S.W.3d 316, 319-20 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd) (stating that an expert witness may be qualified solely on the basis of practical experience).

The record shows that Dr. Maldonaldo received his medical degree from the University of Matamoros in 1985. He has been practicing medicine for over twenty years,

is a certified coroner, a licensed forensic medical examiner, and, at the time of trial, had been employed by the Attorney General's Office for the State of Tamaulipas, Mexico for approximately twelve years. Dr. Maldonado testified that during his twelve years with the Attorney General's Office, he performed over 1,400 autopsies, was trained in determining time of death, and also received a degree in criminology. Additionally, he testified that he is subject to re-certification every five years, and is considered an expert in the State of Tamaulipas.

Given Dr. Maldonado's training and experience, we find the trial court did not abuse its discretion in allowing Dr. Maldonaldo to testify as an expert witness. *See Hernandez v. State*, 53 S.W.3d 742, 751 (Tex. App.–Houston [1st Dist.] 2001, pet. ref'd) (stating that experience alone may provide a sufficient basis for expert's testimony); *Hardin v. State*, 20 S.W.3d 84, 92 (Tex. App.–Texarkana 2000, pet. ref'd) (same). Appellant's third issue is overruled.

## V. RELIABILITY

By his fourth and fifth issues, appellant contends that the trial court failed to perform its gate-keeping function by allowing Dr. Maldonaldo to testify on the victim's time of death without first requiring the State to meet its burden under *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992) (requiring trial court to hold a hearing outside the presence of the jury to determine whether scientific evidence meets a three-prong test for reliability).

At trial, appellant objected to Dr. Maldonado's testimony on the ground that the State had not proven that Dr. Maldonado was qualified to provide an expert opinion as to the victim's time of death. Appellant did not object on the basis that the State had failed

to hold a hearing regarding whether Dr. Maldonado's testimony was based on reliable information.[4]   To preserve an issue on appeal, there must be a timely objection that specifically states the legal basis for the objection.  *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Maldonado v. State*, 902 S.W.2d 708, 711 (Tex. App.–El Paso 1995, no pet.).  Appellant's complaint on appeal that the trial court failed to hold a hearing to determine the underlying reliability of Dr. Maldonado's testimony differs from his trial objection; therefore, we hold he forfeited this issue for review.  *See* TEX. R. APP. P. 33.1(a); *Holmes v. State*, 135 S.W.3d 178, 185 (Tex. App.–Waco 2004, no pet.) (recognizing an expert's qualifications as a separate issue under rule of evidence 702); *Chisum v. State*, 988 S.W.2d 244, 250-51 (Tex. App.–Texarkana 1998, pet. ref'd) (holding objection to admission of expert's opinion did not preserve for review issue of reliability of scientific evidence).  Appellant's fourth and fifth issues are overruled.

## VI. LEGAL AND FACTUAL SUFFICIENCY

By his sixth issue, appellant contends that because Dr. Maldonado was unqualified to provide expert testimony on the victim's time of death, or because the methods used by Dr. Maldonado were either unreliable or improperly applied, the evidence is legally and factually insufficient to prove territorial jurisdiction (i.e., that the homicide occurred in the United State rather than Mexico).  We have already determined that Dr. Maldonado was qualified to testify on behalf of the State as an expert witness.  We also determined that appellant failed to object on the basis that Dr. Maldonado's method of determining time of

_____

[4] At trial, appellant formed his objection in the following manner: "Your Honor, our objection goes that the State has not presented sufficient facts to establish that [Dr. Maldonado] is an expert – he may be, he can testify as to [the victim's] died [sic] from strangulation, but for him to go a step further and give an opinion as to the time of death, he does not have the qualifications . . ."

9

death was unreliable.  Because we have overruled each ground on which appellant bases

his sufficiency of the evidence argument, appellant's sixth issue is also overruled.[5]

## VII.  CONCLUSION

We affirm the trial court's judgment.

$\overline{\qquad\qquad\qquad\qquad}$
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 29th day of July, 2008.

---

[5] On this point, we note that at least one appellate court has embraced the idea that where, like here, an appellant has failed to object on grounds that the methods used by an expert witness proved unreliable, the appellant has essentially forfeited his right to appeal that same issue "in the guise of an insufficiency of the evidence argument."  *See City of San Antonio v. Pollock*, 155 S.W.3d 322, 331 (Tex. App.–San Antonio 2004, pet. granted).  To hold otherwise "would give [the appellant] an unfair advantage. [The appellant] would be free to gamble on a favorable judgment before the trial court, knowing that [it could] seek reversal on appeal [despite its] failure to [object] at trial."  *Id*. (quoting *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409-10 (Tex. 1988).  We recognize, however, that *Pollock* was decided in a civil setting, and we are unaware of single appellate court that has extended its holding to a criminal matter.  Although the State urges us to apply *Pollock* to the current matter before us,  because we have expressly rejected the rationale underlying appellant's sufficiency of the evidence argument, we see no need to do so.