**Opinion issued August 6, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

## NO. 01-18-00592-CR

————————————

## YOLANDA VALLEJO, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court No. 3**
**Tarrant County, Texas**
**Trial Court Case No. 1447365**

---

## MEMORANDUM OPINION

A jury convicted appellant, Yolanda Vallejo, of the Class B misdemeanor

offense of driving while intoxicated[1] and assessed her punishment at forty-five days'

---

[1] *See* TEX. PENAL CODE ANN. § 49.04(b).

confinement in the Tarrant County Jail and imposed a $1,000 fine.[2] In her sole issue on appeal, appellant contends that the trial court erred by allowing a police officer to give an expert conclusion that appellant failed the Horizontal Gaze Nystagmus (HGN) test and that HGN causes visual impairment while driving.

We affirm.

## Background

On the evening of February 6, 2016, Officer K. Meeks, a sergeant with the City of Colleyville Police Department, was on patrol during the night shift. Around 10:45 p.m., he encountered appellant driving her vehicle. When Officer Meeks first observed appellant, her vehicle was stopped approximately twenty yards "shy of the stop line" at a red light with no vehicles in front of her car. When the light turned green, appellant's car did not immediately move. Meeks then saw appellant's vehicle "drift over into the turn lane and then go from the middle lane over to the right lane" without using a turn signal. Officer Meeks decided to conduct a traffic stop. The trial court admitted a video recording taken from the dash camera in Meeks' patrol car.

---

[2] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

2

Officer Meeks smelled alcohol immediately upon making contact with appellant. He observed a "bottle of alcohol or liquor" behind the passenger seat of appellant's car. Meeks could not communicate very well with appellant because he did not speak Spanish, so he called for another officer to come to the scene to conduct a DWI investigation. When Colleyville Police Department Officer M. Foss arrived at the scene, Meeks told him about appellant's driving behavior, the odor of alcohol, and the alcohol he observed in the vehicle.

Officer Foss testified that he has had specific training in detecting intoxication and that he is certified to administer standardized field sobriety tests. When he came into contact with appellant, Foss noticed that there was a "very strong odor of alcohol coming from her breath" and that appellant's eyes were watery, "which further solidified the need for the standardized field sobriety testing." Foss performed the HGN test on appellant. He generally described for the jury what that test entails. The State then asked Officer Foss what the first step is in administering the HGN test. Officer Foss responded:

> The first step is checking to make sure that they're a candidate for the test. There are a few things that we have to check to make sure that—to, I guess, take away some predisposed things that could cause them to not be a candidate.

> One of the things that we have to check for is called resting nystagmus. To make that easy to understand, you simply look at the person's eyes. And as long as they're looking at you normally and you don't see any nystagmus, which would be involuntary jerking of the eyes, you don't

see the eyes bouncing around, simply trying to follow a stationary object, the Defendant did not have that.

The next thing you check for is equal pupil size, which is very simple. If the pupils are the same size, one isn't large while the other is small or vice versa.

And then you check for equal tracking. And what that means is as your stimulus begins to go from one side to the other, the eye should track it equally, meaning that one eye doesn't follow while the other [does] or vice versa or they don't follow unevenly. And provided that they qualify under all three of those initial tests, then you can move into the actual HGN test.

Officer Foss then testified that HGN is caused by central nervous system depressants, such as alcohol, and he described the "clues" of intoxication that officers look for when conducting the HGN test. Defense counsel did not object to any of this testimony.

After the State showed a video that demonstrated how the HGN test is generally conducted, the following exchange occurred:

The State: If HGN is present, can that have any effect on someone's driving?

Defense: Objection; 702.

The Court: Overruled. You may answer the question.

Foss: It could cause a difficulty with impaired vision. It could impair the vision slightly, yes.

Officer Foss testified that, like Officer Meeks, he spoke minimal Spanish and therefore could not communicate well with appellant. However, he was able to communicate with her well enough to conduct the HGN test. He testified that the

4

two "most important factors" with regard to the HGN test "are that they don't move their head and that they follow the stimulus by focusing on it with their eyes," and Foss "was able to communicate that to the Defendant enough that [he] could tell that she was doing it correctly." He testified that he observed "six out of the possible six clues" when he performed the test on appellant. Defense counsel did not object to this testimony. The trial court admitted, without objection, a video recording from the dash camera in Foss's patrol car, which showed him conducting the HGN test on appellant. [Ex. 3]

Officer Foss attempted to conduct the walk-and-turn sobriety test on appellant, but, due to the language barrier, it did not appear that appellant understood the directions that he was giving, and he did not feel comfortable using appellant's performance on that test or on the one-leg-stand sobriety test as evidence of intoxication. He did, however, observe while attempting to conduct this test that appellant had "difficulty maintaining balance once she [got] her feet into the position, seemed to repeat herself, and even though [he would] place her into a position, she'd come out of it immediately" and that appellant "had difficulty walking, taking the steps." Foss testified that he believed that appellant was intoxicated, and he stated:

> I came to that conclusion based on the results of the horizontal gaze nystagmus test combined with her ability to balance while standing, her inability to balance while walking, and combining those elements

5

together. Based on my experience and the—the training that I've had, I combine that together to—to state that she was intoxicated.

Defense counsel did not object to this testimony.

Officer Foss placed appellant under arrest and obtained a search warrant to collect a blood sample. A sample of appellant's blood was collected around 2:00 a.m. on February 7, 2016, a little more than three hours after Officer Meeks stopped appellant. Analysis of appellant's blood sample revealed a blood alcohol level of 0.14.

The jury ultimately convicted appellant of the Class B misdemeanor offense of driving while intoxicated, assessed her punishment at forty-five days' confinement, and imposed a $1,000 fine. This appeal followed.

**Testimony Concerning HGN Test**

In her sole issue on appeal, appellant contends that the trial court erred by allowing Officer Foss to give an expert opinion that because appellant demonstrated HGN, her ability to drive was impaired.

### A. *Standard of Review and Governing Law*

Texas Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702.

6

For expert scientific testimony to be admissible, its proponent must demonstrate by clear and convincing evidence that the testimony is sufficiently reliable and relevant to help the jury reach accurate results. *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017) (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)); *see also Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010) (stating that trial court must be satisfied that three conditions are met before admitting expert testimony under Rule 702: (1) witness is qualified as expert by reason of knowledge, skill, experience, training, or education; (2) subject matter of testimony is appropriate for expert testimony; and (3) admitting expert testimony will actually assist factfinder in deciding case). "In other words, the proponent must prove two prongs: (1) the testimony is based on a reliable scientific foundation, and (2) it is relevant to the issues in the case." *Wolfe*, 509 S.W.3d at 335 (quoting *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). To be reliable, (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 336. We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion, and the ruling will not be disturbed if it falls within the zone of reasonable disagreement. *Id.* at 335.

In *Emerson v. State*, the Court of Criminal Appeals addressed the reliability of the HGN test. *See* 880 S.W.2d 759 (Tex. Crim. App. 1994). The court, "[a]fter

7

consulting the literature concerning alcohol and its effects on human eye movement, and considering case law from other jurisdictions addressing the reliability of the HGN test," concluded that the theory underlying the HGN test was sufficiently reliable pursuant to Rule 702, noting that "[t]he scientific materials addressing the issue have reached the uniform conclusion that the consumption of alcohol has a cognizable effect on human eye movement." *Id.* at 768. The court also concluded that the technique used in administering the HGN test, as designed by the National Highway Traffic Safety Administration (NHTSA), is reliable under Rule 702, stating:

> In this jurisdiction, officers who administer the HGN test receive standardized training in its administration. When administering the HGN test, those officers must follow standardized procedures as outlined in the *DWI Detection* manual published by NHTSA. The test procedures, as outlined in the manual, require an officer to screen for factors other than alcohol that potentially contribute to, or cause, nystagmus, such as other drugs, neurological disorders, and brain damage, prior to administering the HGN test. Therefore, we determine the technique employed in the HGN test to be a reliable *indicator of intoxication*.

*Id.*; *see McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("HGN evidence is reliable, admissible scientific evidence under rule 702 when performed by a police officer who is certified by [NHTSA] and who applies the technique properly."); *Compton v. State*, 120 S.W.3d 375, 377 (Tex. App.— Texarkana 2003, pet. ref'd) (noting that *Emerson* court concluded "that both the

underlying theory and the technique employed in administering the HGN test made it a sufficiently reliable indicator of intoxication").

The Court of Criminal Appeals also addressed "the proper scope of testimony concerning the HGN test." *Emerson*, 880 S.W.2d at 769. The court stated:

> For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN. A witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the HGN test to a precise BAC [blood alcohol concentration].

*Id.*; *see Gullatt v. State*, 74 S.W.3d 880, 883–84 (Tex. App.—Waco 2002, no pet.) (holding that officer's testimony was within parameters of *Emerson* when officer testified he was certified to administer HGN test, officer testified that defendant's performance on HGN test indicated defendant was intoxicated, and officer did not use performance on HGN test to estimate defendant's blood-alcohol level).

## B.    Analysis

Here, after Officer Meeks stopped appellant for suspicion of driving while intoxicated, Officer Foss performed the HGN test on appellant. Foss testified that he is certified in the administration of standardized field sobriety tests, including the HGN test. He testified, without objection, concerning how the HGN test is

administered, including the three conditions—resting nystagmus, equal pupil size, and equal tracking—that an officer is supposed to check for to determine if an individual is a good candidate for the HGN test. He testified that horizontal gaze nystagmus is "caused by central nervous system depressants," which include alcohol, and he testified concerning the "clues" of intoxication that officers look for when conducting the HGN test.

The trial court admitted a video recording demonstrating the administration of the HGN test. This video did not depict Officer Foss administering the HGN test to appellant, but was instead used as a demonstrative aid to explain how the test is administered and the clues of intoxication. After the State played this video for the jury, the following exchange occurred:

State: If HGN is present, can that have any effect on someone's driving?

Defense: Objection; 702.

The Court: Overruled. You may answer the question.

Foss: It could cause a difficulty with impaired vision. It could impair the vision slightly, yes.

Officer Foss then testified, without objection, that despite the language barrier between him and appellant, he was able to give the instructions for the HGN test to appellant—specifically, that she was not to move her head and that she was to "follow the stimulus by focusing on it with [her] eyes"—and appellant performed the test correctly. Foss testified, also without objection, that he "observed six out of

10

the possible six clues [on the HGN test], which would be all of them." The trial court admitted the dash-camera recording from Foss's patrol car of Foss administering the HGN test—and attempting to administer the walk-and-turn test—to appellant. Foss testified, again without objection, that he concluded that appellant was intoxicated "based on the results of the horizontal gaze nystagmus test combined with her ability to balance while standing, her inability to balance while walking, and combining those elements together."

On appeal, appellant argues that the trial court erred by allowing Officer Foss to give an expert conclusion that because appellant had HGN and failed the HGN test, her ability to drive was impaired. The State argues that appellant did not properly preserve error concerning this complaint because appellant objected to the State's question on the basis of Rule 702 without stating a specific basis for the objection.[3]

Generally, to preserve a complaint for appellate review, the complaining party must make a request, objection, or motion that states the grounds for the ruling

---

[3] The State also argues that appellant misconstrued Officer Foss's testimony in that Foss did not testify that appellant's ability to drive was impaired because she had HGN. The question to which appellant objected at trial was: "If HGN is present, can that have any effect on someone's driving?" After the trial court overruled appellant's objection, Foss testified, "It could cause a difficulty with impaired vision. It could impair the vision slightly, yes." Foss later testified, without objection, that appellant demonstrated all six clues on the HGN test and that, in part due to the results on HGN test, he believed that she was intoxicated.

sought with sufficient specificity to make the trial court aware of the complaint and must obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013). A party's objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient does not preserve error. *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd). Rule 702 "cover[s] numerous requirements and guidelines for the admission of expert testimony." *Id.*; *Scherl v. State*, 7 S.W.3d 650, 652 (Tex. App.—Texarkana 1999, pet. ref'd).

A party's objection based solely on Rule 702 alone is, in effect, a general objection to an improper predicate and does not "adequately inform the trial court of any specific complaint upon which it is to rule." *Gregory*, 56 S.W.3d at 182; *Scherl*, 7 S.W.3d at 652. This objection, therefore, does not preserve for appellate review a specific complaint about reliability of evidence. *Gregory*, 56 S.W.3d at 182; *see also Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (stating that expert testimony has three requirements—qualification, reliability, and relevance—that raise distinct questions and objection based on one requirement does not preserve error as to another requirement); *Chisum v. State*, 988 S.W.2d 244, 250–51 (Tex. App.—Texarkana 1998, pet. ref'd) (stating that objection to admission of expert's opinion that did not specify particular deficiency in expert's qualifications or reliability of opinions was general objection that did not adequately

inform trial court of complaint upon which it might rule and did not preserve specific complaint about relevancy or reliability of evidence for appellate review).

Here, the State asked Officer Foss, "If HGN is present, can that have any effect on someone's driving?" Defense counsel objected, stating, "Objection; 702." Defense counsel's objection merely references the number of Rule of Evidence 702, which allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to give an opinion or other testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *See* TEX. R. EVID. 702. Counsel did not specify the particular basis for this objection—whether counsel was objecting because Officer Foss was not qualified to give an expert opinion on this matter, or whether Foss's expert opinion was unreliable, or whether Foss's expert opinion was not relevant. Each of these issues is a distinct requirement for expert testimony, and an objection based on one requirement does not preserve error concerning another. *See Shaw*, 329 S.W.3d at 655; *see also Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006) ("[Expert q]ualification is distinct from reliability and relevance and, therefore, should be evaluated independently."). Because Rule 702 encompasses several requirements, appellant's general objection by mere citation to the number of the rule did not "adequately inform the trial court of any specific complaint upon which it [was] to rule." *See Gregory*, 56 S.W.3d at 182; *see*

*also Scherl*, 7 S.W.3d at 652; *Chisum*, 988 S.W.2d at 250–51. We therefore hold that appellant failed to preserve her complaint for appellate review.

Even if appellant had preserved her complaint for appellate review, however, we would hold that the trial court did not abuse its discretion in allowing Officer Foss to testify that HGN "could cause a difficulty with impaired vision" and "could impair the vision slightly."

In *Emerson*, the Court of Criminal Appeals held that, for testimony concerning a defendant's performance on the HGN test to be admissible, "it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique." *See* 880 S.W.2d at 769. The court further held that, for law enforcement officers, "this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN." *Id.* A witness who is qualified as an expert on the administration and technique of the HGN test "may testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the HGN test to a precise" blood-alcohol concentration. *Id.*

Officer Foss testified, without objection, that he has had specialized training concerning the administration of field sobriety tests and that he is certified to administer the HGN test. He further testified, also without objection, concerning the administration of the test and the clues of intoxication that officers look for when

conducting the test. Under *Emerson*, this certification qualifies Foss as an expert on the administration and technique of the HGN test. *See id.* Foss's testimony that the presence of HGN "could cause a difficulty with impaired vision" and "could impair the vision slightly" is not outside of the scope of his expertise with respect to the HGN test. Foss testified concerning appellant's performance on the HGN test, stating that she demonstrated six out of six clues on the test, but he did not attempt to correlate her performance on the test to a precise blood-alcohol concentration. Appellant did not object to Foss's testimony concerning her performance on the HGN test.

Appellant also argues on appeal that the State did not demonstrate that Officer Foss administered the HGN test properly to appellant, pointing out that the record contains no evidence that Foss asked appellant the proper screening questions prior to administering the HGN test. Appellant argues that testimony that Foss properly administered the HGN test to appellant was necessary to establish that the evidence concerning appellant's HGN test results was reliable. At trial, however, appellant did not object to Foss's testimony concerning appellant's results on the HGN test, nor did she object on the basis that the results were not reliable because Foss did not properly administer the HGN test. Instead, appellant objected to Foss testifying concerning whether the presence of HGN could have an effect on an individual's driving, and this is the testimony that appellant complains of on appeal. Whether

15

Foss followed NHTSA protocol by asking proper screening questions prior to conducting the HGN test on appellant on this particular occasion is not relevant to whether Foss could testify generally regarding whether the presence of HGN could have an effect on an individual's driving. We hold that, even if appellant had preserved her complaint for appellate review, the trial court did not abuse its discretion by allowing Foss to testify that the presence of HGN "could cause a difficulty with impaired vision" and "could impair the vision slightly."

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


                                        Evelyn V. Keyes
                                        Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).