Eddie SHAW, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00412–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 9, 2010.

Wayne T. Hill, Houston, for appellant.

Jessica Akins McDonald, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and SULLIVAN.

## OPINION

LESLIE B. YATES, Justice.

A jury convicted appellant Eddie Shaw of one count of aggravated sexual assault of a child under the age of fourteen and assessed punishment at life imprisonment and a $10,000 fine. Appellant challenges his conviction in six issues. He argues that the trial court erred by admitting irrelevant testimony about the complainant's conduct after the abuse, permitting the complainant's school principal to testify as an outcry witness, admitting DNA evidence without the necessary proof of the chain of custody, and allowing an expert to testify about the DNA evidence in this case. Finally, he argues that the evidence is legally and factually insufficient. We affirm.

BACKGROUND

When Jane[1] was seven or eight years old, appellant moved in to the townhouse where Jane lived with her mother and two-year-old sister. Soon thereafter, appellant sexually assaulted Jane, who testified at trial about the details of the assault. Jane testified that when her mother was taking a bath one night, appellant took Jane into a laundry room, unzipped his pants, and showed her his penis. He then pulled down Jane's pants, brought her into the foyer area of the house, and got on top of her. He put his penis inside her vagina. Jane said that it hurt, and she tried to scream, but he told her to stop. Appellant said he would kill her mother and sister if she ever told anyone what happened. Jane remembered that semen came out of his penis when he was putting his pants back on. She was bleeding from her vagina, so she threw away her underwear that night.

The next day, Jane told her mother that appellant touched her and did things he should not have done. Her mother did nothing, and appellant continued to have vaginal or oral sex with Jane nearly every day until she was about ten or eleven years old. When Jane was eleven years old, her mother took her to a doctor and discovered that Jane was six-and-a-half months pregnant. Jane told her mother, "[Appellant] is the one that got me pregnant," but no report was made to authorities.

Jane gave birth to a baby boy when she was eleven years old, and she retained custody of her son. Jane's mother told Jane to tell the doctors that a boy named John at her elementary school impregnated her. About eighteen months after Jane's son was born, appellant resumed sexually assaulting her. By this time,

Jane's mother had also given birth to at least one of appellant's four biological daughters, and the family was living in and out of various hotel rooms. Appellant would have vaginal and oral sex with Jane while her mother would take baths and the other children were present in the hotel room. This routine continued for about another year. Jane testified that, in total, appellant had sex with her hundreds and possibly a thousand times.

Shortly after her fourteenth birthday, Jane and her son moved in with her maternal grandmother. Jane began attending school and was enrolled in a teen parenting program. One day she was in a fight at school and was sent to an assistant principal's office. Shannon Fisch, the assistant principal, testified at trial as an outcry witness. Fisch said Jane told her that Jane had been raped by her mother's boyfriend, and her son was the offspring of that assault. That night, Jane also told her grandmother about the assault and that appellant was the father of her child. Her grandmother took her to a police station, and they made a report.

The State presented testimony from various persons involved in the investigation. Officer Heidi Ruiz worked at the Houston Police Department (HPD) Children's Assessment Center, and she investigated this case. She testified generally about how children disclose to adults that they have been sexually abused, and she said that children often "cry out" to multiple adults because they are not ready to disclose every detail of the abuse the first time they tell someone. Over appellant's objection, Ruiz was permitted to testify that Jane's "actions were appropriate in this case." Ruiz based her conclusion on

---

1. To protect the privacy of the child complainant, we refer to the child by a pseudonym.

her experience working with children for ten years and her observation of how children disclose these types of offenses.

Ruiz further testified that she collected buccal swabs of DNA from Jane and Jane's son. She brought the swabs to an HPD property room. Officer Carlos Valera similarly testified that he collected buccal swabs from appellant and delivered them to an HPD property room. Cassandra Pope, an employee at an HPD crime lab, testified that she received the buccal swabs from the property room and transported them to the lab. Karen Gincoo, an employee at the crime lab, testified that she inventoried some of the buccal swabs and sent them via FedEx to Orchid Cellmark, a forensic DNA testing laboratory in Tennessee, because the HPD crime lab did not perform paternity testing.

Tabitha Bullock, a DNA analyst at Orchid Cellmark, also testified at trial. After a hearing outside the jury's presence, the trial court found her qualified to testify as an expert. The State introduced the actual DNA samples taken from appellant, Jane, and Jane's son, and appellant's counsel objected because the State had failed to establish the chain of custody. The court overruled the objection and admitted the DNA samples. Bullock prepared a report based on her testing of the DNA samples, which showed that there was a 99.99% probability that appellant was the father of Jane's child.

The jury found appellant guilty and assessed punishment at life imprisonment and a $10,000 fine. This appeal followed.

## ANALYSIS

### A. Officer Ruiz's Testimony Regarding Jane's Outcry Actions

■ Appellant argues in his first issue that Ruiz's testimony about Jane's outcry actions being "appropriate" was irrelevant and did not assist the trier of fact because it improperly bolstered Jane's testimony as "a direct opinion on the truthfulness of a child." *Yount v. State,* 872 S.W.2d 706, 708 (Tex.Crim.App.1993) (quotation omitted); *see* TEX.R. EVID. 702. Ruiz testified generally about how a child sex abuse victim will often "cry out" to more than one person "[b]ecause children are not ready to talk about every aspect of a sex offense until they are actually comfortable that they are not going to be abused by the perpetrator again." The State asked Ruiz whether she believed Jane's "actions were appropriate in this case," and appellant objected based on "relevance." The court overruled the objection, and Ruiz said, "Yes." [2]

---

**2.** For purposes of this appeal, we presume without deciding that an objection to "relevance" preserves the alleged error that testimony does not "assist the trier of fact." Initially, the Court of Criminal Appeals suggested that relevancy under Rule 401 was a different inquiry from assist the trier of fact under Rule 702. *See Morales v. State,* 32 S.W.3d 862, 865 (Tex.Crim.App.2000) (noting the distinction between Rule 401 relevancy and the "fit" requirement of Rule 702 and explaining that a trial judge must find that "expert testimony meets both the Rule 401 and Rule 702 requirements"); *Yount,* 872 S.W.2d at 708–09 & n. 4 (noting that the question of whether testimony is helpful to a jury is a separate issue from relevancy); *Cohn v. State,* 849 S.W.2d 817, 819 & n. 4 (Tex.Crim.App.1993) (holding the testimony was relevant under Rule 401 but noting "[w]hether that testimony was helpful to a jury" under Rule 702 "may be another question"). Still, recent opinions have suggested that relevancy is distinct from the "assist the trier of fact" requirement. *See Vela v. State,* 209 S.W.3d 128, 130–31 (Tex.Crim.App. 2006) (explaining that Rules 104(a), 702, and 401 provide the basis for the three requirements that an expert be qualified and the testimony be reliable and relevant). Although the court in *Vela* distinguished the Rule 702 "assist the trier of fact" requirement from the Rule 401 relevancy require-

■ We review a trial court's decision to admit evidence for an abuse of discretion, and we will reverse only when the court's decision falls outside the zone of reasonable disagreement. *Burton v. State,* 230 S.W.3d 846, 849 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Rule 401 of the Texas Rules of Evidence defines *relevant evidence* as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. In a case involving the sexual abuse of a child, a fact of consequence to the determination of the action includes whether the child was actually abused. *See Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993). Evidence of abuse is relevant if it "corroborates another witness'[s] story or enhances inferences to be drawn from another source of evidence." *Id.* at 820. Accordingly, testimony is relevant if the witness explains that certain behavior is consistent with sexual abuse and the child in question has exhibited such behavior. *Yount,* 872 S.W.2d at 708–09; *Cohn,* 849 S.W.2d at 819. Specifically in *Cohn,* the Court of Criminal Appeals held that expert testimony was relevant when the expert said that the child "was *appropriate* with her feelings about what happened" because she was crying and

appeared nervous. 849 S.W.2d at 818 (emphasis added). Furthermore, although a direct opinion on the truthfulness of a child is inadmissible under Rule 702 because it does not assist the trier of fact, testimony about the behavior of child sex abuse victims is admissible under Rule 702. *Yount,* 872 S.W.2d at 709; *Cohn,* 849 S.W.2d at 818; *see also Tamplin v. State,* No. 14–01–01253–CR, 2002 WL 31662560, at *3 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd) (not designated for publication) (noting that "testimony concerning behavioral characteristics typically exhibited by victims of sexual abuse and describing behavior observed in complaining witnesses is not improper").

Here, evidence at trial showed that Jane cried out to multiple persons, including her mother, her grandmother, and a school principal. Based on her experience, Ruiz explained that sexually abused children often cry out to multiple persons, and thus, Jane's actions were "appropriate." This evidence enhances an inference drawn from the fact that Jane cried out to multiple adults, and therefore, makes it more probable that Jane was sexually assaulted. Ruiz's testimony was about the behavior of a child sex abuse victim; she did not provide a direct opinion on whether Jane was telling the truth or was a credible witness.[3]

---

ment, it then stated that the "assist the factfinder" requirement was commonly referred to as the "relevance" condition. *Id.* at 131 (describing the three conditions for expert testimony as qualification, reliability, and relevance). Thus, a party's objection based on "relevance" presumably would let the trial judge know that he or she wants the testimony excluded because it does not assist the trier of fact (rather than, or in addition to, the reason that it does not tend to make the existence of a fact of consequence more or less probable). *See Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992) (explaining that to preserve error, a party must inform the trial court "what he wants [and] why he thinks himself entitled to it"). We

need not decide today whether an objection based on "relevance" preserves for appeal the issue of whether expert testimony assists the fact finder because appellant's argument fails on the merits.

3. Prior to Ruiz testifying about how children cry out to multiple adults, Ruiz testified about questions that can be asked of a child to help determine if the child is telling the truth. Appellant now argues that "[t]he juxtaposition of the questions asking Officer Ruiz if there were safeguards/questions that could determine the truthfulness of the child, with the officer's responses that the complainant's actions in this case were appropriate, constitute

Accordingly, the trial court did not abuse its discretion in admitting Ruiz's testimony—it was relevant and assisted the trier of fact. We overrule appellant's first issue.

### B. Admission of Fisch's Outcry Testimony

■ Appellant argues in his second issue that the trial court erred in designating Fisch, the assistant principal, as an outcry witness under article 38.072 of the Texas Code of Criminal Procedure. In a case alleging aggravated sexual assault of a child, a witness's hearsay testimony about a child's statement is admissible if the following requirements are met: (1) the statement describes the alleged offense; (2) the statement was made by the child against whom the offense was allegedly committed; (3) the witness is the first person, eighteen years of age or older, other than the defendant, to whom the child made the statement; (4) the party intending to offer the statement provides notice at least fourteen days before the proceeding begins, and the notice includes the name of the witness and a summary of the statement; (5) the trial court finds, in a hearing outside the jury's presence, that the statement is reliable based on the time, content, and circumstances of the statement; and (6) the child testifies or is avail-

able to testify at the proceeding. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2 (West Supp.2009). If, as here, a defendant objects based on hearsay, the State bears the burden of proving each element of the statute. *Zarco v. State,* 210 S.W.3d 816, 828 (Tex.App.-Houston [14th Dist.] 2006, no pet.). If the trial court overrules the objection, we will infer the court found that the State met its burden. *See id.* at 831 (holding that the trial court "impliedly found the testimony reliable" when it overruled the defendant's general hearsay objection). We review the trial court's decision for an abuse of discretion, and we will reverse only when the court's decision falls outside the zone of reasonable disagreement. *Id.* at 830.

The only argument appellant makes on appeal regarding the court's admission of Fisch's outcry testimony is that appellant's mother, rather than Fisch, was the first person, eighteen years of age or older, to whom Jane made a statement describing the offense.[4] It is undisputed that Jane first told her mother about the abuse, but the State argues that Jane did not disclose sufficient details to her mother to describe the alleged offense. *See Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App.1990). The indictment in this case alleged that appellant committed the offense of aggra-

---

the 'functional equivalent' of opinion testimony regarding the truthfulness of the child complainant's allegations." But appellant did not object to the "truthfulness" testimony, and Ruiz never testified that anyone asked Jane these questions. The testimony immediately before the objected-to question was about the action of a child telling multiple adults about abuse. Further, Ruiz testified about several different topics between the initial "truthfulness" testimony and the statement that Jane's actions were appropriate. Appellant did not preserve any error regarding the earlier testimony about how to determine if a child is telling the truth.

4. Accordingly, we do not address the other statutory requirements, including the issue of whether Jane's statement to Fisch described the offense with sufficient detail. *See, e.g., Hayden v. State,* 928 S.W.2d 229, 231 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) (concluding that the child's statement to the first person did not describe the alleged offense without addressing whether the statement to the second person was sufficient); *Schuster v. State,* 852 S.W.2d 766, 768 (Tex. App.-Fort Worth 1993, pet. ref'd) (same); *see also Zarco,* 210 S.W.3d at 830–31 (addressing only the elements of the statute that the parties disputed on appeal).

vated sexual assault of a child by intentionally or knowingly causing the penetration of Jane's sexual organ. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West 2000).

■ A child's description of the alleged offense "must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. The evidence must clearly show that the victim described the alleged offense to the witness. *Id.* At the time of the hearing to determine if Fisch was a proper outcry witness, the only evidence before the court about what Jane told her mother came from Jane's testimony on direct examination. Jane said that she told her mother, "[Appellant] is the one that got me pregnant." Although this statement may raise an inference of penetration, it does not clearly describe the alleged offense that appellant penetrated Jane's sexual organ. *Compare Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (holding that the child did not describe the offense of aggravated sexual assault when the child said appellant touched her private areas), *Carty v. State*, 178 S.W.3d 297, 300–01, 306 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (holding that the child did not describe the offense of penetrating the child's sexual organ when the child said appellant was molesting her), *and Castelan v. State*, 54 S.W.3d 469, 475 (Tex.App.-Corpus Christi 2001, no pet.) (holding that the child did not describe the offense of aggravated sexual assault when he said the defendant "put his thing in through the back"), *with Nino v. State*, 223 S.W.3d 749, 753 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that the child described the offense of aggravated sexual assault when he said the defendant "made me suck it" and pointed to his penis), *and Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.-San Antonio 1998, pet. ref'd) (holding

that the child described the offense of indecency with a child when the child said the defendant touched her between the legs and underneath her bathing suit). The trial court had "broad discretion" to determine who was a proper outcry witness, *see Garcia*, 792 S.W.2d at 92, and we cannot say it was outside the zone of reasonable disagreement to conclude that Fisch was the outcry witness.

■ Nonetheless, any error in admitting Fisch's statement would be harmless in this case. The admission of inadmissible hearsay testimony under article 38.072 is nonconstitutional error, and we will consider it harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *See Nino*, 223 S.W.3d at 754; *Chapman v. State*, 150 S.W.3d 809, 814 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (citing *Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App.2004)); *see also* Tex.R.App. P. 44.2(b). Accordingly, if the same or similar evidence is admitted without objection at another point in the trial, the error is harmless. *Nino*, 223 S.W.3d at 754 (citing *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App.1991)). Here, Fisch's description of Jane's statement to the jury was not substantial: "[Jane] had told me that she was raped by her mother's boyfriend, and she did have a child at that time who was three years old. . . ." On the other hand, Jane testified in great detail about the repeated sexual abuse she endured. In particular, she testified about the first time appellant penetrated her vagina with his penis, causing her pain and bleeding. She also testified that appellant was the father of her baby. Paternity testing evidence showed a 99.99% probability that appellant fathered Jane's child. We are reasonably assured that Fisch's testimony did not influence the verdict or had only a slight effect. Thus, any error

in admitting the statement was harmless. We overrule appellant's second issue.

## C. Chain of Custody of DNA Evidence

■ In appellant's third issue, he argues that the trial court erred when it admitted the DNA evidence because the State failed to establish a complete and proper chain of custody. Specifically, he argues that a number of unnamed witnesses "who may have had contact with the DNA samples" did not testify, one named witness who handled the evidence did not testify, and there was insufficient evidence "tracing the delivery and receipt of the FedEx packages" from HPD to Orchid Cellmark.

■ Appellant has not shown any evidence of tampering or impropriety, and "[w]ithout evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim.App.1997); *accord Caddell v. State*, 123 S.W.3d 722, 727 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) ("Objections regarding theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, go to the weight of the evidence rather than to its admissibility."). The State need only prove the beginning and end of the chain of custody; it need not show a "moment-by-moment account of the whereabouts of evidence from the instant it is seized." *Reed v. State*, 158 S.W.3d 44, 52 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *accord Caddell*, 123 S.W.3d at 727; *Porter v. State*, 969 S.W.2d 60, 66 (Tex.App.-Austin 1998, pet. ref'd).

Here, there was testimony about the beginning of the chain: Officers Ruiz and Valera said they collected the buccal swabs and delivered them to the HPD property room. There was also testimony from the middle of the chain: Pope said she brought the swabs to the crime lab, and Gincoo said she sent swabs to Orchid Cellmark in Tennessee via FedEx. Finally, there was testimony about the end of the chain: Bullock said that Orchid received the FedEx package, and she analyzed the DNA on the swabs. Further, the various packages and envelopes containing the swabs included the initials of people who handled the swabs. Although appellant suggested to the jury that the swabs may have been handled in a way that could degrade the DNA, he has provided no argument that there was any tampering or impropriety. We overrule appellant's third issue.

## D. Bullock's Expert Testimony Regarding Paternity Testing

Appellant argues in his fourth issue that the trial court erred in allowing Bullock to testify as an expert. Specifically, appellant argues that the trial court erred in admitting Bullock's testimony without first making a finding that the testimony was reliable. Because appellant did not request that such a finding be made, object to the trial court's failure to do so, or object to the testimony on the basis that it was not reliable, we hold that this issue was not preserved.

■ To preserve error for appellate review, the record must show that the party made a specific objection on the record and received an adverse ruling on that objection. *See* TEX.R.APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim.App.1991). To make a specific objection, a party must "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). Notwithstanding a party's failure

to make a specific objection, error will be preserved if a specific objection was apparent from the context. *See* Tex.R.App. P. 33.1(a)(1)(A); *see also* Tex.R. Evid. 103(a)(1).

■■■■ A party may challenge expert testimony on at least three specific grounds. First, a party may allege that the witness does not qualify as an expert because the witness lacks the requisite knowledge, skill, experience, training, or education in the subject matter of the expert's testimony. *Vela v. State,* 209 S.W.3d 128, 131 (Tex.Crim.App.2006); *see* Tex.R. Evid. 702. Second, a party may allege that the subject matter of the testimony is inappropriate because it is unreliable. *Vela,* 209 S.W.3d at 131, 133–34; *see* Tex.R. Evid. 705(c); *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App.1992). Third, a party may allege that the testimony will not assist the fact finder in deciding the case. *Vela,* 209 S.W.3d at 131; *see* Tex.R. Evid. 401, 702. Respectively, these three requirements of expert testimony are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela,* 209 S.W.3d at 131. The three requirements raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another. *Turner v. State,* 252 S.W.3d 571, 584 n. 5 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd) (holding that an objection based on the expert's qualifications did not preserve the reliability issue). Similarly, if a party objects to expert testimony without identifying one or more of these issues, no error is preserved for our review. *Gregory v. State,* 56 S.W.3d 164, 182 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd) (holding that "[o]bjections based simply on Rule 702 and *Daubert* alone" are general objections that do not preserve error).

■■■■ In addition to challenging an expert on the three grounds discussed above, a party in a criminal case has a procedural right to voir dire an expert under Rule 705(b) of the Texas Rules of Evidence. Under this rule, a trial court must grant a party's "request to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based," and this examination is conducted outside the presence of the jury. Tex.R. Evid. 705(b). The purpose of this examination is twofold: (1) it allows the defendant to determine the foundation of the expert's opinion without the fear of eliciting inadmissible evidence in the jury's presence, and (2) it may supply the defendant with "sufficient ammunition to make a timely objection to the expert's testimony on the ground that it lacks a sufficient basis for admissibility." *Goss v. State,* 826 S.W.2d 162, 168 (Tex.Crim.App.1992); *see also* Tex.R. Evid. 705(c) ("If the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible.").

■■■■ A party's argument that the trial court failed to conduct a properly requested Rule 705(b) hearing is a distinct argument from one challenging the qualifications of an expert. *See Jenkins v. State,* 912 S.W.2d 793, 814 (Tex.Crim.App.1993); *see also Ghahremani v. State,* No. 14–06–00729–CR, 2007 WL 3146723, at *5, *8 (Tex.App.-Houston [14th Dist.] Oct. 30, 2007, pet. ref'd) (mem. op., not designated for publication) (addressing separately the issues of whether the expert was qualified and whether the court improperly denied appellant's request for a Rule 705(b) hearing). Thus, an objection based on an expert's lack of qualifications does not preserve for our review the issue of whether the court erred in denying a proper re-

quest for a Rule 705(b) hearing. *Jenkins*, 912 S.W.2d at 814.

Here, appellant filed a pretrial "request for a Rule 705(b) hearing," in which he requested "before the State puts on any witness from which it expects to solicit [expert] testimony . . ., a hearing be held outside the hearing of the jury pursuant to Tex.R. Evid. 705(b) to determine the admissibility of that testimony." There was no pretrial ruling on this motion. When the State called Bullock to testify at trial, appellant again requested a "705 hearing." There was a discussion off the record, and then the court retired the jury and allowed counsel for both parties to ask Bullock questions. The court never denied appellant's request for a Rule 705(b) hearing on the record, nor did the court limit the scope of this hearing. During the hearing, both parties asked Bullock questions primarily about her qualifications, rather than anything about the data underlying her conclusions or the reliability of her paternity testing. Appellant asked two questions—one about Bullock's continuing education and another about her publications. When appellant's counsel said, "I have no further questions," the court said, "Your objection is overruled. She is qualified to testify."

Nowhere in the record do we see an objection to the reliability or relevance of Bullock's testimony, and the context provided by the hearing outside the jury's presence does not suggest that appellant objected on either of these grounds. Although there was no objection on the record to Bullock's qualifications, it may be apparent from the context that appellant objected on this ground because those were the type of questions both parties asked Bullock and the court specifically overruled an "objection" and said Bullock was "qualified" to testify. *See Martin v. State*, 246 S.W.3d 246, 258–59 (Tex.App.-

Houston [14th Dist.] 2007, no pet.) (looking to the trial court's statement admitting expert testimony to determine the context of an objection alleging that an expert was testifying "outside his range").

But appellant does not argue on appeal that Bullock was unqualified. Rather, he argues that the court erred when it held an "abbreviated" and "truncated" Rule 705 hearing "restricted to the qualifications of the witness without requiring the State of Texas to establish" the reliability of Bullock's testimony. The record does not show, however, that the trial court denied appellant's request for a Rule 705 hearing. In fact, it held a hearing outside the jury's presence. If the court impermissibly limited this hearing in scope, it was appellant's duty to bring this issue to the trial court's attention and show error in the record. *See Ortiz v. State*, 144 S.W.3d 225, 230 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (en banc) (unanimous decision) (explaining that an appellant bears the "burden of developing a sufficient record in the trial court to demonstrate reversible error on appeal"). Further, appellant never objected to the reliability of Bullock's testimony. Without such an objection, the State was not required to prove the reliability of Bullock's testimony, nor was the court required to hold the State to its burden of proof. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995) ("Once the party opposing the [expert testimony] objects, the proponent bears the burden of demonstrating its admissibility."); 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 702.7, at 73–74 (3d ed. 2002) ("Once an objection is made, the proponent of the testimony bears the burden of demonstrating its reliability."). Finally, the implied objection based on Bullock's qualifications did not preserve error related to

the reliability of Bullock's testimony or the court's alleged failure to hold a Rule 705(b) hearing. *See Jenkins,* 912 S.W.2d at 814 (holding that no Rule 705(b) voir dire issue was preserved when the appellant objected to the expert's qualifications); *Stewart v. State,* 995 S.W.2d 251, 258 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding that no reliability issue was preserved when the appellant objected to the expert' qualifications).

Accordingly, because appellant's fourth issue was not preserved, it is overruled.

### E. Sufficiency of the Evidence

■ In his fifth and sixth issues, appellant argues that the evidence is legally and factually insufficient to support his conviction. While this appeal was pending, the Court of Criminal Appeals held that only one standard should be used to evaluate the sufficiency of the evidence in a criminal case: legal sufficiency. *Brooks v. State,* 323 S.W.3d 893, 894 (Tex.Crim.App.2010) (plurality opinion); *id.* at 912 (Cochran, J., concurring). Accordingly, we review the sufficiency of the evidence in this case under a rigorous and proper application of the *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), legal sufficiency standard. *Brooks,* 323 S.W.3d at 906 (plurality opinion).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 898. This court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.* at 901. We defer to the fact finder's resolution of con-

flicting evidence unless the resolution is not rational. *Brooks,* 323 S.W.3d at 902 n.19, 906. Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App. 2007).

Appellant was charged with the aggravated sexual assault of a child by intentionally or knowingly causing the penetration of Jane's sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i). Jane testified in detail how appellant penetrated her sexual organ. She said that she was seven or eight years old "when he put his penis inside of my vagina." Appellant notes the contradictory statement Jane made when she identified the father of her baby as an elementary school student named "John." Appellant further notes that Jane's outcry to her principal was made only when Jane faced discipline for getting into a fight. But these arguments primarily concern Jane's credibility as a witness, not the sufficiency of the evidence. The jury was free to weigh this evidence, and we will not disturb the jury's credibility determinations on appeal. *See Brooks,* 323 S.W.3d at 901.

Appellant also argues that the paternity testing evidence does not satisfy the legal sufficiency standard because it rested on several assumptions to reach the 99.99% probability of paternity. We need not decide whether a 99.99% probability of paternity alone is sufficient to convict appellant because Jane's testimony by itself was legally sufficient evidence. *See Bargas v. State,* 252 S.W.3d 876, 888 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (holding the evidence sufficient despite the child victim's "unsophisticated terminology and rough time-frame of the event" and the lack of any other evidence because the child provided a detailed account of the

abuse). The DNA evidence was not necessary to convict appellant in this case. *See id.* ("Moreover, physical evidence is not required when, as in this case, the complainant provides ample testimony to establish that a sexual assault occurred."). Accordingly, the evidence was legally sufficient, and we overrule appellant's fifth and sixth issues.

Having overruled all of appellant's issues, we affirm the trial court's judgment.