**Opinion issued December 6, 2012.**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NOS. 01-11-00900-CR; 01-11-00901-CR

————————————

**RUSSELL HAL DUNCAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1239820; 1239821**

---

**MEMORANDUM OPINION**

Russell Hal Duncan was charged with the aggravated sexual assault and sexual assault of his minor sister-in-law, E.P.[1]  A jury found Duncan guilty of both

---

[1]     Duncan was charged separately but the two cases were tried together.

offenses and sentenced him to five years' imprisonment for each offense, but recommended that the trial court suspend Duncan's sentence for sexual assault and instead place him on community supervision for six years. In his sole point of error, Duncan contends the trial court abused its discretion by allowing Carol Wilson, E.P.'s guardian, to testify as an outcry witness under article 38.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2012). We affirm.

## Background

Duncan was charged and convicted of the aggravated sexual assault and sexual assault of E.P., his wife's younger sister. At the time of the abuse, E.P., who has Down syndrome, was thirteen years old and living with Aron Hawkins, an ex-boyfriend of E.P.'s mother, but would visit her sister and Duncan on the weekends. Hawkins became unable to care for E.P. so she went to live with Carol Wilson, her aunt by marriage, who became her legal guardian. After E.P. went to live with Wilson, Hawkins' girlfriend, Theresa Johnson, discovered two letters written by E.P. in a composition book that was left behind at Hawkins' house. In these letters, E.P. described being sexually abused by her sister's boyfriend or "sister['s] baby dad," saying he "mix[ed]" with her two times, he told her not to tell because he did not want to go to jail, he had a "baby dick and it do not fe[e]l good," he had sex with her, she "said no 3 time[s]," and if "he mix [with] me

2

a[ga]in I will call 911." Johnson gave the letters to Hawkins, who read them and then called Wilson. After Wilson read the letters, she spoke to E.P. and E.P. confirmed that she wrote the letters, that she was referring to Duncan in the letters, and that what she wrote was true. Wilson then contacted the Houston Police Department and took E.P. to the Children's Assessment Center for a forensic interview and medical exam.

After aggravated sexual assault and sexual assault charges were brought against Duncan, the State filed its "Notice of Intent to Use Child Abuse Victim's Hearsay Statement" informing Duncan that Wilson would testify as an outcry witness pursuant to article 38.072 of the Code of Criminal Procedure. Thereafter, the trial court conducted a pretrial hearing to determine the admissibility of Wilson's outcry testimony. Wilson testified at the pretrial hearing that she read E.P.'s letters and confronted E.P. about them. Wilson testified that she and E.P. had an hour long conversation about E.P.'s letters, during which Wilson asked E.P. if she had written the letters and whether someone had "messed" with her in the wrong way. E.P. confirmed that she wrote the letters and explained what happened and who was involved. Wilson testified that although E.P. did not describe in full detail what happened, she did explain that she wrote down what happened in her letters and that those letters were true. Wilson also testified that E.P. told her that

the abuse first occurred when she was thirteen, right after Thanksgiving, and occurred for a second time in January after she had turned fourteen.

At the conclusion of the hearing, Duncan objected to Wilson's testimony and asked the trial court to exclude Wilson's testimony. However, the trial court ruled that Wilson would be designated as the outcry witness under article 38.072. The trial court later reaffirmed this ruling after it conducted a proceeding to reconsider the admissibility of Wilson's outcry testimony during Johnson's testimony.

At trial, Hawkins testified that E.P. first lived with her sister and Duncan for a few months while her mother was in jail or drug rehabilitation, then she came to live with him and his girlfriend, Johnson, and finally she moved in with Wilson. He testified that after E.P. moved in with Wilson, Johnson discovered E.P.'s letters among belongings that E.P. had left at Hawkins's house. Johnson showed the letters to Hawkins, who then contacted Wilson and told her that he had something she needed to see. He testified that Wilson came by his house and he gave her the letters.

Wilson testified at trial that E.P. wrote in her letters that Duncan had "messed with her," which meant he had sex with her, and that he used his "dick," which meant his male sexual organ. She testified that she spoke with E.P. because she wanted to confirm what was written in E.P.'s letters—that Duncan had sex

4

with E.P. Wilson testified that E.P. confirmed those details from the letters. Finally, Wilson testified that E.P. told her that Duncan showed E.P. a "naked movie" during one of the assaults.

Dr. Reena Isaac, who interviewed and performed a medical exam on E.P. at the Children's Assessment Center, also testified at trial. She explained that E.P. told her that her sister's husband, Duncan, touched her inside her vagina and bottom with his penis. Dr. Isaac also testified that E.P. told her that Duncan touched her two times, once before she turned fourteen and once after. Finally, Dr. Isaac explained that E.P. told her Duncan showed her a "flick movie" with people doing "nasty stuff."

E.P. also testified at trial. She explained that Duncan touched her the first time around Thanksgiving. He called her into a room in his house, told her to pull her pants down and get on her hands and knees on the floor, and then touched the inside of her "middle part" or "jayjay" with his "middle part" or penis. She testified that it hurt when he touched her and that she was bleeding from her middle part after he was finished. E.P. testified that the second time Duncan touched her, he brought her into the same room in his house, bent her forward over a table, and touched her inside her bottom with his penis. E.P. testified that she told Duncan that it hurt and to stop, but he told her to do it anyway. E.P. demonstrated on anatomically correct dolls how Duncan touched her each time.

5

E.P. then explained that she wrote her letters so she could "get it off [her] chest" but that she did not give the letters to her sister because she was scared her sister would be mad. E.P. testified that she wrote in her letters that Duncan told her not to tell anyone because he did not want to go to jail for "mixing" or having sex with her twice. E.P. also said that Duncan showed her a "flick movie" showing people having sex.

The jury returned a guilty verdict on both charges, aggravated sexual assault and sexual assault. This appeal followed.

## Discussion

In his sole issue, Duncan contends the trial court erred in admitting Wilson's testimony under article 38.072, which creates an exception to the hearsay rule in certain circumstances. The State responds that Duncan's assertions in support of this argument are not preserved for appellate review and, even if they are preserved, any error in the trial court's decision to permit Wilson to testify as the outcry witness was harmless.

## A.  Standard of Review

The trial court's designation of an outcry witness is reviewed under an abuse-of-discretion standard. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Polk v. State*, 367 S.W.3d 449, 452 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A trial court abuses its discretion when its ruling is outside the

6

zone of reasonable disagreement. *Polk*, 367 S.W.3d at 452 (citing *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Id.* A trial court's designation of an outcry witness will be upheld if it is supported by the evidence. *Thomas v. State*, 309 S.W.3d 576, 578 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Garcia*, 792 S.W.2d at 92).

## B.    Applicable Law

Article 38.072 of the Texas Code of Criminal Procedure governs the admissibility of outcry statements and provides that certain statements, which would otherwise be considered hearsay, are admissible in the prosecution of certain offenses, including aggravated sexual assault and sexual assault, committed against a person with a disability or a child fourteen years of age or younger. *See* TEX. CODE CRIM. PRO. ANN. art. 38.072, § 1. This statute applies to statements that: (1) describe the alleged offense; (2) were made by the child or person with a disability against whom the offense was allegedly committed; and (3) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.* art. 38.072, § 2(a). The Court of Criminal Appeals has interpreted this statute to apply to the first adult to whom the complainant "makes a statement that in some discernible manner describes the alleged offense." *Garcia*, 792 S.W.2d at 91; *see also Bargas v. State*,

252 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Thus, "the statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91; *see also Bargas*, 252 S.W.3d at 894.

## C.    Preservation

In support of his contention that the trial court abused its discretion in permitting Wilson to testify as the outcry witness, Duncan makes the following five allegations: (1) there was no evidence that Wilson was at least eighteen years old; (2) E.P.'s writings are general allusions of abuse and she did not describe the alleged offense in any discernible way; (3) E.P. did not describe the details of the alleged sexual abuse to Wilson; (4) E.P.'s outcry statements are unreliable because they are not consistent with any other evidence and because they are ambiguous and devoid of any details of the alleged sexual abuse; and (5) Wilson improperly testified to an extraneous offense, the pornographic film. The State responds that these arguments are not preserved for appellate review.

Before trial, in accordance with article 38.072, the trial court held a hearing to determine the admissibility of Wilson's testimony as an outcry witness. Following testimony from Wilson and E.P., Duncan objected to Wilson's testimony on the grounds that "there was no true outcry in this case, other than the letters," "Wilson [does not fit] into the role of being an outcry witness," and E.P.

8

did not discuss the details of the abuse with Wilson. Duncan concluded by asking the court not to permit Wilson to testify as the outcry witness, suggesting the court should allow the letters to stand on their own.

Later, during Johnson's testimony at trial, the trial court conducted another brief hearing on the outcry issue outside the presence of the jury. Johnson gave conflicting testimony about the sequence of events after she discovered E.P.'s letters. Johnson first testified that she spoke with E.P. about the letters before the letters were given to Wilson, but she later changed her mind and said she did not speak to E.P. about them until after Wilson had the letters. Johnson ultimately admitted she could not really remember. At that point, Duncan objected to Wilson's outcry testimony on the ground that Johnson, not Wilson, was the first adult E.P. spoke to about the abuse; therefore, according to Duncan, Johnson was the proper outcry witness. After permitting each side the opportunity to question Johnson outside the presence of the jury, the trial court reaffirmed its previous ruling permitting Wilson to testify as the outcry witness.

Finally, Duncan objected during Wilson's trial testimony and argued that the State was about to elicit testimony from Wilson that Duncan showed E.P. a pornographic film during one of the assaults but that this testimony was outside the scope of the hearsay statement that was provided by the State in the outcry notice. The State responded that this information was provided to Duncan in the outcry

9

notice. Duncan deferred to the State on this issue and did not pursue his objection to a ruling. Wilson then proceeded to testify that E.P. told her Duncan showed E.P. a "naked movie."

To preserve a complaint for appellate review, a party must make a timely objection to the trial court stating "the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(B). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). The argument raised on appeal must comport with the specific objection made at trial, or error is not preserved. *Duran v. State*, 163 S.W.3d 253, 256 (Tex. App.—Fort Worth 2005, no pet.).

After reviewing Duncan's objections at trial, we conclude that he has failed to preserve his arguments for appeal relating to the lack of evidence that Wilson was over eighteen or that permitting testimony about the pornographic movie constituted the admission of an extraneous offense because he did not object on these grounds. The only objections raised by Duncan were that there was no true outcry, Wilson did not fit in the role of an outcry witness, Johnson was the true outcry witness, and any reference to the pornographic film would be outside the scope of the hearsay statement. Because the arguments on appeal do not comport

10

with his objections below, we conclude that Duncan has failed to preserve his arguments relating to Wilson's age and the pornographic film for appellate review. *See Duran*, 163 S.W.3d at 256 (finding appellant failed to preserve argument that outcry statement was unreliable where his objection to outcry statement at trial was that statement was not excited utterance); *Robinson v. State*, 985 S.W.2d 584, 586 (Tex. App.—Texarkana 1998, pet. ref'd) (holding argument on appeal that outcry statement was unreliable not preserved where appellant's objection at trial was based on whether witness was proper outcry witness); *Barnett v. State*, No. 08-10-00219-CR, 2012 WL 2832557, at *2 (Tex. App.—El Paso July 11, 2012, no pet.) (not designated for publication) (finding arguments on appeal not preserved where appellant's objection at trial—that witness was not first outcry witness—did not comport with the arguments raised on appeal and was not specific enough to alert trial court of appellant's additional complaints); *Davis v. State*, No. 14-18-00985-CR, 2010 WL 2573813, at *2–3 (Tex. App.—Houston [14th Dist.] June 29, 2010, pet. ref'd) (mem. op., not designated for publication) (finding appellant's reliability objection to witness's outcry testimony did not preserve error regarding whether witness was first adult to whom outcry was made).

## D. Harm Analysis

With respect to Duncan's remaining assertions on appeal relating to E.P.'s description of the assaults in her letters and to Wilson, and the unreliability of

E.P.'s outcry statement, we decline to consider whether the trial court abused its discretion on these issues because even if the trial court erred in permitting Wilson to testify, the error was harmless. The improper admission of hearsay testimony under article 38.072 is nonconstitutional error and, therefore, is harmless unless the error affected the appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The erroneous admission of this testimony is harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Furthermore, if the same or similar evidence is admitted without objection at another point in the trial, the error is harmless. *Id.* (citing *Nino*, 223 S.W.3d at 754); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Without objection, E.P. testified in detail about the charged offenses. She testified that she understood the difference between a lie and the truth and that she would testify truthfully. She then described how Duncan had sex with her twice, the first time putting his "middle part" or "dick" inside her "middle part" or "jayjay" and the second time putting his "middle part" in her "bottom." After E.P. described how, when, and where Duncan touched her, she demonstrated on anatomically correct dolls. E.P. also testified to what she meant in her letters and

12

that the first person she spoke to about the assault was Wilson, after Wilson read her letters and confronted her. E.P.'s letters were also admitted in evidence without objection.

Further, Dr. Isaac provided a substantially similar account of the offenses as Wilson provided in her testimony. According to Dr. Isaac, E.P. told her Duncan twice touched her inappropriately, once when she was thirteen and once when she was fourteen. Dr. Isaac also explained that E.P. told her Duncan touched her inside her vagina and her bottom with his penis. Dr. Isaac testified that E.P. told her Duncan had shown her a pornographic movie. Finally, E.P.'s medical records, which included the report prepared by Dr. Isaac following her interview with E.P. reflecting Dr. Isaac's questions and E.P.'s responses concerning the assaults, were entered into evidence without objection. Thus, because the same or similar evidence was admitted without objection at other points during the trial, we conclude that any error in admitting Wilson's testimony as the outcry witness did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Shaw*, 329 S.W.3d at 653–54 (holding that any error in admitting outcry statement of principal at complainant's school was harmless where his statement was not substantial, complainant testified in detail to the abuse, and paternity tests showed a 99.99% probability that defendant fathered complainant's child); *Nino*, 223 S.W.3d at 754 (holding that error in admitting outcry witness's

testimony was harmless where complainant's mother and brother provided "substantially the same account of the offense" as outcry witness); *Chapman*, 150 S.W.3d at 814–15 (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant and pediatrician); *West v. State*, 121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that error in admitting outcry testimony did not influence jury's verdict or had but a slight effect because complainant provided detailed testimony relating to offense).

We overrule Duncan's sole point of error.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).