**Affirmed and Memorandum Opinion filed March 17, 2020.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00198-CR

## FREDRICK WAYNE JOHNSON, Appellant

**v.**

## THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1143134**

## MEMORANDUM OPINION

This is a cold case. In 1984, 14-year-old S.D.[1] was found dead with her throat slashed and her hands bound behind her back. Although the case initially went unsolved, DNA testing on evidence gathered during the Houston Police Department's investigation was performed beginning in 2007 and linked appellant Frederick Wayne Johnson to the crime. In 2018, a jury convicted appellant of

---

[1] We use the victim's initials as she was a minor at the time the offense was committed. *See* Tex. R. App. P. 9.10(a)(3), (b).

capital murder. *See* Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 6, 1983 Tex. Gen. Laws 5311, 5317 (former Tex. Penal Code § 19.03(a), since amended). The State did not seek the death penalty, resulting in an assessment of punishment of life imprisonment with no fine. *See* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 2, 1973 Tex. Gen. Laws 1122, 1124 (former Tex. Penal Code § 12.31(a), since amended). In two issues, appellant argues that (1) the chain of custody was not established for 15 pieces of evidence admitted by the trial court and (2) the trial court erred in denying appellant's motions for mistrial after the State referred to appellant as a "sociopath" during closing argument. We affirm.

## I.   BACKGROUND

On February 7, 1984, S.D.'s body was found in an abandoned apartment building. Houston Police Department Detective Burmester investigated the crime scene with Houston Police Department Officer Blando, while Houston Police Department Sergeant Ward attempted to locate witnesses. Burmester found a piece of yellow clothing partially covering S.D. and two pieces of paper with dirty or bloody footprints on them. Each of these items was retrieved from the scene and marked as evidence by Blando.

During the investigation, appellant approached Ward, who asked appellant to come to the police station for an interview. At the station, Burmester collected appellant's hat and shoes for testing. Burmester also noticed that the pants appellant was wearing had writing on them that said "[S.D.] was here" next to an arrow pointing to the crotch of the pants. Burmester took a cutting from appellant's pants that day at the station. The pants were later retrieved from appellant's residence with his consent. Later in the investigation, Burmester and Ward interviewed Marvin Lee Smith, during which Burmester obtained a blood sample from Smith.

2

Dr. Espinola conducted the autopsy of S.D., discovering seven wounds on her neck, including fatal lacerations of her external jugular vein and right common carotid artery. Espinola also retrieved material from S.D.'s throat and determined that asphyxiation was a contributing cause of her death. Espinola also took vaginal and rectal swabs, creating smear slides from these samples, and a blood sample from S.D. DNA testing was not available at the time the samples were taken.

In 2007, Detective Mehl of the Houston Police Department Cold-Case Squad sent numerous items concerning this case to Orchid Cellmark, a forensic testing company, for DNA analysis. The testing showed that S.D.'s DNA was on appellant's pants and also revealed blood on appellant's pants and shoes. In addition, the testing showed that the DNA on the vaginal swab collected during the autopsy was consistent with appellant while excluding Smith as a potential contributor. After receiving the test results, Mehl met with appellant, collecting another DNA sample from him on buccal swabs. In 2008, testing of the footprints collected at the crime scene revealed them to be consistent with appellant's shoes. Further testing performed in 2016 on the yellow piece of clothing recovered at the scene revealed sperm on the garment, for which appellant could not be excluded as a contributor.

During a pretrial hearing and at trial,[2] appellant objected to the admission of numerous State's exhibits on the grounds that the exhibits had not been authenticated by proof of the chain of custody for each item, including:

- exhibits 9–12, which were admitted as swabs, slides, and a

---

[2] The hearing specifically addressed appellant's written motion to suppress statements he gave to the police. While there is no written motion to suppress physical evidence in the record before us, at the hearing the parties presented testimony concerning the authenticity of numerous pieces of evidence, and appellant argued that certain evidence discussed herein should be excluded on chain-of-custody grounds: accordingly, we construe the hearing as addressing a motion to suppress that evidence as well.

blood sample taken during Espinola's autopsy of S.D.;

- exhibit 14, which was admitted as material Espinola removed from S.D.'s throat during the autopsy;

- exhibit 15, which was admitted as buccal swabs with appellant's DNA collected by Mehl in 2007;

- exhibit 18, which was admitted as cuttings from the pants the police collected from appellant;

- exhibit 19, which was admitted as a blood sample from Smith;

- exhibit 20, which was admitted as appellant's shoes and hat that Burmester collected from appellant;

- exhibit 22, which was admitted as a paper recovered from the scene with a dirty shoe print on it;

- exhibit 23, which was admitted as the pair of pants the police collected from appellant;

- exhibit 41, which was admitted as another sample of S.D.'s blood;

- exhibit 50, which was admitted as a paper recovered from the scene with a bloody shoe print on it;

- exhibit 90, which was admitted as a yellow garment found partially covering S.D.'s body at the crime scene; and

- exhibit 91, which was admitted as cuttings from exhibit 90.

The trial court denied appellant's chain-of-custody objections, either during the pretrial hearing, at trial, or both, with regard to each of these exhibits.[3]

During closing argument, the State referred to appellant as a "sociopath"

---

[3] The parties cite to testimony adduced at both the pretrial hearing and at trial in arguing the admissibility questions raised here. When an appellate court is asked to determine whether the trial court's denial of a pretrial motion is erroneous, the general rule is that only evidence adduced at the hearing on the motion is considered. *See Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984). However, when, as here, appellate issue "complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties during the trial on the merits, consideration of relevant trial testimony is appropriate." *Id.* Accordingly, we consider evidence from both the pretrial hearing and trial in examining the exhibits at issue.

twice in quick succession. Each time, appellant objected to the characterization as improper argument. The trial court sustained appellant's objections and instructed the jury to disregard the State's comments. Appellant moved for a mistrial based on the State's comments, which the trial court denied.

## II.    ANALYSIS

### A.  Authenticity of exhibits

In his first issue, appellant challenges the admission of 15 of the State's exhibits on the grounds they were not properly authenticated by chain-of-custody evidence. Texas Rule of Evidence 901(a) provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Under Rule 901, "[t]he preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The trial court's determination is reviewed for abuse of discretion. *See id.* As there were no findings of fact sought or filed on this issue, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its rulings as long as those findings are supported by the record. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

A chain of custody is not required to authenticate every piece of evidence. Rather, "[e]vidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638 (citing Tex. R. Evid. 901(b)(1), (3)-(4)).

5

While Rule 901 does not discuss requirements for the "chain of custody," this method of authentication is typically required for an article of evidence that has no distinctive features or is fungible, such as DNA evidence. *See Hartsfield v. State*, 200 S.W.3d 813, 818 (Tex. App.—Texarkana 2006, pet. ref'd) (discussing chain-of-custody generally); *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.) (discussing DNA evidence). This type of evidence is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). However, "[a]bsent evidence of tampering or other fraud, . . . , problems in the chain of custody do not affect the admissibility of the evidence. Instead, such problems affect the weight that the fact-finder should give the evidence, which may be brought out and argued by the parties." *Druery v. State*, 225 S.W.3d 491, 503–04 (Tex. Crim. App. 2007) (citing Tex. R. Evid. 901(a) and *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997)).

### 1. Evidence authenticated by testimony of person with knowledge

We begin with evidence the State was not required to authenticate by proving the chain of custody. As discussed above, one way to authenticate an exhibit is by testimony of a witness with knowledge "that an item is what it is claimed to be." Tex. R. Evid. 901(b)(1). A number of the challenged exhibits fall into this category. Burmester identified several exhibits as items that had been collected during the crime-scene investigation he conducted with Blando or during his meeting with appellant at the police station later that same day. Burmester testified that he recognized pieces of paper with shoe prints on them (exhibits 22 and 50) and a piece of yellow clothing (exhibit 90) as items recovered from the

crime scene during his and Blando's investigation.[4] Burmester also identified appellant's shoes and hat (exhibit 20) as items appellant was wearing when Burmester met him at the station, and which Burmester collected from appellant for testing. Finally, Burmester identified a pair of pants (exhibit 23) as pants appellant was wearing the day of the investigation by their distinctive markings, specifically writing with the words "[S.D.] was here" next to an arrow pointing at the crotch of the pants.

Appellant argues that the State did not establish a sufficient chain of custody for each of these exhibits. The testimony of Burmester, however, displays sufficient personal knowledge of the items for a reasonable juror determine that each item "is what it is claimed to be," thereby meeting the authenticity requirement for admissibility. *See* Tex. R. Evid. 104(a), 901(b)(1). There was no need to further authenticate the items by presenting chain-of-custody evidence. *See id.*; *Tienda*, 358 S.W.3d at 638; *see also Belcher v. State*, 661 S.W.2d 230, 233 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) ("The State is not obligated to prove chain of custody on such items as clothing.").

## 2. Objections to improper storage

Appellant challenges the authenticity of several items on the basis that they were improperly stored. Specifically, with regard to items Espinola collected during the autopsy—vaginal and rectal swabs from the victim (exhibits 10 and 11), slides prepared from smears from those swabs (exhibit 9), a sample of the victim's blood (exhibit 12), and material recovered from the victim's throat (exhibit 15)— appellant states that it is "problematic" that Espinola could not testify about "the

---

[4] Appellant also challenges the admission of exhibit 91, cuttings from the yellow clothing marked as exhibit 90, but only on the basis that exhibit 90 itself was not properly authenticated, which we address above.

way the evidence was stored during the last 28 years," and comments that the Houston Police Department had "issues" with storage of evidence during the time period relevant to this case.

These are not appropriate objections to the admissibility of these items on chain-of-custody grounds. "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone*, 942 S.W.2d at 617. Appellant offers no specific evidence that the items in question were tampered with, instead making generalized accusations concerning improper storage of evidence in the property room, which are insufficient. *See id.*; *Caddell v. State*, 123 S.W.3d 722, 727 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("Objections regarding theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, go to the weight of the evidence rather than to its admissibility."). Appellant's arguments boil down to complaints not about the chain of custody, but rather that the evidence was stored for a long period of time—an argument that has been firmly rejected by the Court of Criminal Appeals of Texas. *See Lagrone*, 942 S.W.2d at 617 ("[W]e see no reason to prohibit the admission of properly identified evidence just because it has been kept in an evidence room for an extended period of time and undergone prior forensic testing."). As appellant's arguments concern the weight, not the admissibility, of these exhibits, they provide no grounds to disturb the trial court's rulings admitting this evidence. *See id.*

### 3. Gaps in the chain of custody

Appellant challenges the admission of exhibits 15 (buccal swabs with appellant's DNA) and 41 (a sample of S.D.'s blood) on the grounds that there was confusion as to whether Orchid Cellmark received these items in a shipment in June or September of 2007, and that not all shipping containers were not presented

at trial. Likewise, regarding cuttings from appellant's pants (exhibit 18), appellant takes issue with the fact that there was no testimony from the sergeant who checked the cuttings out from the property room, and that the cuttings were not presented in their original shipping container at trial.[5]

These are alleged gaps in the chain of custody that, as above, go to the weight to be given to these pieces of evidence and not their admissibility. *Druery*, 225 S.W.3d at 503–04; *Lagrone*, 942 S.W.2d at 617; *see Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (rejecting argument that chain of custody was inadequate due to "insufficient evidence 'tracing the delivery and receipt of the FedEx packages' from HPD to Orchid Cellmark").

### 4. Tampering with Smith's blood sample

Finally, appellant challenges the admission of the blood sample of Smith, whom Ward and Burmester interviewed during their initial investigation of the case. Appellant states that there was leakage from the vial containing the sample and there was a paper towel in the plastic bag in which the vial was placed that Burmester, who collected the sample, testified he did not place there. Appellant concludes that the condition of the exhibit "suggests possible tampering with the item since it was not in the same condition as when it was originally placed into storage."[6] This "evidence" of tampering is too speculative for us to conclude that

[5] Appellant also makes the argument that there was no evidence presented concerning how the cuttings were "stored during the approximate[ly] twenty-three years [they] sat in the HPD property room," while again pointing to generalized "issues" regarding improper storage of evidence by the Houston Police Department during the time the cuttings were stored in the property room. As explained above, these arguments go to the weight, not the admissibility, of the evidence. *See Lagrone*, 942 S.W.2d at 617.

[6] Appellant also makes the same arguments we rejected above concerning lack of testimony about how the sample was stored and lack of packaging in which the sample was shipped to Orchid Cellmark. Both go to the weight, not the admissibility, of the evidence. *See*

the trial court abused its discretion in admitting the evidence. *See Caddell*, 123 S.W.3d at 727; *Dossett v. State*, 216 S.W.3d 7, 16–17, 21–22 (Tex. App.—San Antonio 2006, pet. ref'd) ("possibility" that DNA samples were contaminated was insufficient even when mold had grown on samples, testing conditions raised the possibility of cross-contamination, and sexual assault kit had different number of slides at time of testing than it did when kit was made 20-years earlier).

We overrule appellant's first issue.

## B. Closing argument

In his second issue, appellant argues that the trial court erred in denying appellant's motions for a mistrial after the State referred to appellant as a "sociopath" during closing argument. The State argued as follows:

> [STATE:] What would be a reason that you would cover the face of an individual whose throat you just slit? Okay? Because you don't want to look at someone. You don't want to look at your handy work.
>
> This man sitting here, this is a deprived individual. He's a sociopath. He's a guy—
>
> [DEFENSE]: Objection to improper argument, Judge.
>
> THE COURT: Sustained.
>
> [DEFENSE]: Have the jury instructed to disregard—
>
> THE COURT: Disregard that last statement. Don't consider—
>
> [DEFENSE]: Move for a mistrial.
>
> THE COURT: All right. Don't consider it for any purpose. And that's denied.
>
> [STATE]: I'll rephrase it.
>
> We know from the evidence he's a sociopath or was a sociopath—
>
> [DEFENSE]: Object to improper argument, Judge.
>
> THE COURT: Sustained.

*Lagrone*, 942 S.W.2d at 617; *Shaw*, 329 S.W.3d at 654.

[DEFENSE]: Ask the jury again to be instructed to disregard—

THE COURT: Disregard that last statement. Don't considerate it for any purpose.

[DEFENSE]: And we again ask for a mistrial.

THE COURT: That's denied. Thank you.

Proper jury argument generally falls within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex. Crim. App. 1973).

The court of criminal appeals has instructed that reference to a defendant as a "sociopath" constitutes improper argument if there has been no evidence adduced that the defendant is a sociopath. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996) ("Assuming that, in fact, there was no evidence in the record that appellant was a sociopath, then the prosecutor did inappropriately stray outside the record."). However, an isolated reference to the defendant as a sociopath, even when unsupported by the record, is cured by the trial court's "prompt instruction" that the jury disregard the statement. *Id.* at 597–98 (denial of motion for mistrial proper when trial court instructed jury to disregard references to defendant as sociopath in closing). Here, the trial court sustained appellant's objections of improper argument and immediately instructed the jury to disregard the State's references to appellant as a sociopath, curing any harm. *See id.* Under these circumstances, we determine the trial court did not err in denying appellant's motions for a mistrial based on the State's references to appellant as a sociopath. We overrule appellant's second issue.

### III.  CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     Charles A. Spain
        Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).