

# NUMBER 13-22-00560-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RUBEN GONZALES MENDOZA,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Ruben Gonzales Mendoza appeals his conviction for continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02. A jury found Mendoza guilty of one count of continuous sexual abuse of a young child against complainant A.R., and not guilty as to a separate count of continuous sexual abuse of a young child against

A.R.'s sister, D.G. Mendoza argues that (1) the evidence was insufficient to sustain the conviction; (2) the trial court erred in allowing forensic interviewer Michelle Rubio to testify as an outcry witness; (3) the trial erred in permitting Rubio's speculative expert testimony; and (4) the judgment is void because it includes a fine that was not assessed against him. We affirm as modified.

## I.    BACKGROUND

Mendoza was charged by an eight-count indictment with the following: (1) aggravated sexual assault of a child against D.G.; (2) aggravated sexual assault of a child against A.R.; (3) continuous sexual abuse of a young child against D.G.; (4) continuous sexual abuse of a young child against A.R.; (5) indecency with a child by sexual contact against D.G.; (6) indecency with a child by sexual contact against A.R.; (7) indecency with a child by exposure against A.R.; and (8) indecency with a child by exposure against D.G. *See id.* §§ 22.021(a)(2)(B), 21.02, 21.11(a)(1), 21.11(a)(2). As to count four, the predicate offenses alleged were aggravated sexual assault and indecency with a child, alleged to have occurred "on or about the 11th day of April, 2013 through the 11th day of April, 2017." *See id.* §§ 22.021, 21.11.

The evidence adduced at trial shows that Mendoza met A.R.'s mother, M.G., in 2010. After they dated for around a year, M.G. introduced Mendoza to her daughters, A.R. and D.G. As described further below, A.R. testified that she and Mendoza had "sexual intercourse" hundreds of times from the time she was ten or eleven years old until she was fifteen years old, and she recalled that the abuse occurred in various locations in Victoria, Texas, including an apartment at Caney Run, an apartment at Pinnacle Point, Riverside Park, and outside a Walgreen's parking lot. The State also offered the testimony

2

of Sexual Abuse Nurse Examiner (SANE) Leslie Kallus and the trial court admitted her

SANE examination report into evidence without objection. Kallus, reading the report into

the record, testified that A.R. stated that Mendoza

> touched [her] and had sex with [her]. . . . He was a family friend. He's done this at the Caney apartments, the Pinnacle apartments, and his apartments. It started when I was 10 or 11 years old and living in the Caney apartments. He would tell me to touch him.
>
> . . . .
>
> His clothes were on, but he would have me touch him over and under his clothes. This usually happened in the room that me and my sisters were in and in the kitchen. It occurred continuously. I remembered at the Caney apartments in the living room[,] on the floor with a carpet to the kitchen, that was the first time we had actually . . . done it. It was where we had sex the first time.
>
> . . . .
>
> At 11 years old he would put his penis in my mouth. He would have me suck his dick, or penis, and then he would get his hand on it and jerk himself off. This happened more than 50 times. He would sometimes park at Riverside Park. That's where it happened daily. . . . When I was 13 to 14 years old, it was happening every day in his car.
>
> . . . .
>
> He would place his fingers . . . in my vagina. This happened less than the number of times he had sex with me. I was 12 to 14 years old when this happened. Sometimes he would have me stroke his penis. This didn't happen often, but it happened more than three times but less than 20. This happened to me when I was 10 years old.
>
> . . . .
>
> When I was on my period, he said it was because of him, and he said it was because we had been having sex. I started my periods when I was 11 years old. We were living in the Caney apartments. One time he had me have sex with him when I was on my period. I was about 13 years old.
>
> Rubio also testified on behalf of the State. As part of her testimony, Rubio was

3

asked what "script memory" was, and she responded as follows:

> So script memory, a lot of times when there has been continuous abuse, because it's happened so many times, a lot of times they forget. They tie in one event with the other, and it's hard for them—because it happened so many times, for them to give the details of every event that happened, and so they kind of get blurred on those lines. Or sometimes they may forget some of the details or not remember some of the events at all because of the trauma that makes them forget those things, or it's also used as a protective device that they don't . . .

Defense counsel objected, stating that "[w]e're getting into some scientific theory now." Defense counsel then requested to voir dire Rubio outside of the presence of the jury. Defense counsel argued to the trial court that "[w]e don't have any evidence before the Court that the underlying scientific theory is actually valid. She has no knowledge of it. She said it herself. As such, any testimony in regards to script [memory] should be inadmissible."

The trial court overruled Mendoza's objection and the trial resumed. After the State abandoned all counts except counts three and four, a jury found Mendoza not guilty as to count three and guilty as to count four. The trial court sentenced Mendoza to thirty years' imprisonment in accordance with the jury's verdict. This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

By his first issue, Mendoza argues that the State failed to prove "the elements of the offense charged, specifically that [Mendoza] committed two or more acts of sexual abuse against a child, [A.R.], younger than 14 years of age with the intent to arouse or gratify the sexual desire of [Mendoza]." Mendoza does not provide any other reason in his brief explaining why the evidence is insufficient.

4

**A. Standard of Review & Applicable Law**

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731—32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 732; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (noting that "the reviewing court is required to defer to the jury's credibility and weight determinations").

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The "law" as "authorized by the indictment" includes the statutory elements of the offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

A hypothetically correct charge would instruct the jury that, "[t]o obtain a conviction

5

for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). But the proof must establish "there is at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Further, the uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1); *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish the element of penetration beyond a reasonable doubt).

**B.    Discussion**

A.R. testified that she was "raped and molested" by Mendoza as a child, and that he "penetrated [her] vagina with his penis from the ages of 10, 11, 12, 13, 14, and 15." This abuse occurred in various residences throughout A.R.'s childhood. When she was "[s]ix, seven," she and her family moved into "an apartment called Caney Run." When she was "13, 14," she moved from the Caney Run apartment to an apartment at Pinnacle Point.

Asked when Mendoza first started "sexually abus[ing]" her, A.R. responded "10 or 11." She testified that this occurred at the Caney Run apartments. A.R. testified that Mendoza "tried to get [her] to give him a hand job," and "there was a separate time where

6

he had tried to get me to [give him] oral." She specifically recalled that, at the Caney Run apartments, Mendoza put his mouth on A.R.'s genital area and "had [her] use [her] hand to grab his penis." She testified that, at the Caney Run apartment, there "would be times where we would have sex in the living room or in the living room on the couch."

On cross-examination, A.R. testified that the sexual intercourse occurred "like three" times a week continuously over a period of two years, both while she was left alone with Mendoza while her mother worked, and inside Mendoza's vehicle. A.R. said she was "sure" that the sexual intercourse occurred at this rate consistently for two years at the Caney Run apartment, and she later affirmed that "it happened 312 times." A.R. testified that the abuse continued on a consistent basis when she moved to Pinnacle Point and that, in total, "we're talking about around 600 times [A.R.] had sexual intercourse with [Mendoza]."

The SANE examination report was admitted without objection. It recounts that the first act of sexual intercourse occurred when A.R. was ten or eleven, and A.R. specifically recalled another act of sexual abuse occurring when she was thirteen and on her period.

This evidence was sufficient to establish that Mendoza "caus[ed] the penetration of the sexual organ of [A.R.]" "by [his] sexual organ and/or fingers" on at least two occasions while A.R. was younger than fourteen, and that the first and last occasions were separated by "at least 28 days." *See David*, 663 S.W.3d at 678; *Smith*, 340 S.W.3d at 48; *Curry*, 30 S.W.3d at 404.[1]

---

[1] Consequently, we need not entertain Mendoza's argument that the State failed to prove that Mendoza had the requisite "intent to arouse or gratify [his] sexual desire." The evidence was sufficient to establish two separate acts of aggravated sexual assault, which does not require a showing of such an intent. *See* TEX. PENAL CODE ANN. § 22.021.

Deferring to the jury's credibility determinations, we conclude that the evidence was sufficient for the jury to have found Mendoza guilty of continuous sexual abuse of a young child. *See Joe*, 663 S.W.3d at 731–32; *Ramos*, 636 S.W.3d at 651; *see also* TEX. PENAL CODE ANN. § 21.02(b), (d); TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1). We overrule Mendoza's first issue.

### IV. OUTCRY WITNESS TESTIMONY

By his second issue, Mendoza argues that the trial court erred in allowing Rubio to testify as an outcry witness.

### A. Standard of Review & Applicable Law

Hearsay is an out of court statement offered at trial for the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is generally inadmissible unless an exception applies. *Id.* R. 802. Article 38.072 of the Texas Code of Criminal Procedure provides a statutory exception that permits the State to introduce certain hearsay statements that a child victim of sexual abuse makes to an outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2. An outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child spoke about the offense. *Id.* art. 38.072, § 2(a)(3). Among other requirements, the trial court must hold a hearing outside the presence of the jury to determine if the hearsay statement is "reliable based on the time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b)(2). To qualify for the exception, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*,

8

343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

"A trial court has broad discretion in determining the admissibility of outcry statements pursuant to this statute, and the trial court's exercise of that discretion will not be disturbed on appeal unless a clear abuse of discretion is established by the record." *Marquez v. State*, 165 S.W.3d 741, 746 (Tex. App.—San Antonio 2005, pet. ref'd). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

The erroneous admission of a hearsay statement constitutes non-constitutional error that must be disregarded unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(b). An appellate court should not overturn a criminal conviction for non-constitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (emphasis in original) (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)).

## B. Discussion

The State argues that even if the trial court erred in permitting Rubio's outcry witness testimony, Mendoza's claim would fail because any such error was harmless. We agree. "In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.)

9

(collecting cases).

A.R. testified to numerous instances of sexual abuse that occurred on a continuous basis for years, and much of the abuse occurred in the Caney Run apartments, which she lived in when she was younger than fourteen. Mendoza did not object to Kallus's testimony or the SANE examination report which also chronicled the abuse, and specifically provided that two distinct acts of sexual abuse occurred when A.R. was ten or eleven and thirteen. Accordingly, because the other properly admitted evidence established the same facts set forth in Rubio's testimony, we conclude that any error in the admission of her testimony was harmless. *See Gibson*, 595 S.W.3d at 327. We overrule Mendoza's second issue.

## V. EXPERT TESTIMONY

By his third issue, Mendoza complains that the trial court erred in permitted Rubio to testify about "script memory."

## A. Standard of Review & Applicable Law

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). An expert witness may offer an opinion if he is qualified to do so by his knowledge, skill, experience, training, or education and if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. TEX. R. EVID. 702.

Three requirements must be met before expert testimony can be admitted: "(1) the

10

witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Rhomer*, 569 S.W.3d at 669. "The three requirements raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another. Similarly, if a party objects to expert testimony without identifying one or more of these issues, no error is preserved for our review." *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (cleaned up).

## B. Discussion

Rubio testified that she was employed by Hope of South Texas, a Child Advocacy Center (CAC), as the lead forensic interviewer. She has conducted over 2,000 forensic interviews. Rubio testified that she is trained as a forensic interviewer and trains other forensic interviewers. She testified that the concept of script memory is disseminated through forensic interviewer trainings, either through CAC Texas or through a "national alliance." Rubio affirmed that, to the best of her knowledge, "every forensic interviewer trained through CAC [is] familiar with script memory." On appeal, Mendoza argues that "Rubio was not qualified for her opinion to testify as to the 'script memory' theory, there was no showing that this [was] a valid and scientific form of theory, and she should not have been permitted to be allowed expert opinion at this trial."

Aside from Mendoza's bare assertion that Rubio was not qualified or that the underlying scientific theory was unreliable, he offers no further explanation as to why

11

Rubio's testimony was inadmissible expert testimony. Mendoza does not refer us to any cases applying the law to facts similar to the instant case, and otherwise provides us no guidance as to how to appropriately analyze the issue of expert testimony from a child forensic examiner regarding script memory.[2] We conclude that Mendoza has waived this issue by inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)); *Briceno v. State*, 675 S.W.3d 87, 96 (Tex. App.—Waco 2023, no pet.) (finding waiver where appellant "inadequately briefed" an issue).[3]

We do note that other courts have expressly found expert testimony regarding script memory admissible. *See United States v. Vallejo*, 237 F.3d 1008, 1020 (9th Cir. 2001) ("[W]e [have] held that expert testimony regarding the characteristics of 'delayed disclosure' and 'script memory,' commonly found in victims of child abuse, would assist the trier of fact in determining whether the victim was abused as a child and would not infringe on the jury's role of determining witness credibility."); *State v. Noor*, No. A22-1528, 2024 WL 160075, at *2 (Minn. Ct. App. Jan. 16, 2024) ("We do not discern any plain error in the foundational reliability for the interviewer's testimony about 'episodic'

---

[2] In his brief, Mendoza cites three cases in support of his argument, all of which discuss the admissibility of expert testimony generally, but none of which has any particular bearing on the case at hand. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90 (1993); *Kelly v. State*, 824 S.W.2d 568, 577 (Tex. Crim. App. 1992); *Hartman v. State*, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997).

[3] Having found that Mendoza waived this issue by inadequate briefing, we need not address whether he adequately preserved error by his delayed objection to Rubio's testimony, or whether his objection was sufficient to preserve error as to Rubio's qualifications. *See Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

and 'script' memory. The state established the interviewer's qualifications to testify regarding the emotional and psychological characteristics of children who experience sexual abuse."); *State v. Ruiz*, No. 49719-1-II, 2018 WL 4091733, at *7 (Wash. Ct. App. Aug. 28, 2018) (concluding that forensic interviewer's training, experience, professional observations, and knowledge, qualified her to testify about child memory and recantation); *see also Lanphere v. State*, No. 05-22-00420-CR, 2023 WL 3000567, at *3 (Tex. App.— Dallas Apr. 19, 2023, no pet.) (mem. op., not designated for publication) (finding forensic interviewer who had conducted "more than 3,000 forensic interviews" had "a sufficient background in the field of memory recall . . . to discuss 'script' versus 'episodic' memory") (citing *Ruiz*, No. 49719-1-II, 2018 WL 4091733, at *7); *Olguin v. State*, No. 05-20-00811-CR, 2022 WL 4115492, at *4 (Tex. App.—Dallas Sept. 9, 2022, no pet.) (mem. op., not designated for publication) (finding sufficient evidence of continuous sexual abuse of a young child where forensic interviewer "explained that [complainant] appeared to have 'script memory' of chronic abuse, 'where there is a routine' so that specific instances 'kind of blend together'"); *GonzalezCastillo v. State*, No. 02-22-00156-CR, 2023 WL 5115535, at *2 (Tex. App.—Fort Worth Aug. 10, 2023, no pet.) (mem. op., not designated for publication) (finding sufficient evidence of continuous sexual abuse of a young child where forensic interview explained complainant's interview by using the concept of "script memory").

Accordingly, we overrule Mendoza's third issue.

## VI.    ERRONEOUS ASSESSMENT OF FINE

An intermediate appellate court may reform a trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See* TEX.

R. APP. P. 43.2(b) (authorizing appellate courts to modify the judgment and affirm as modified); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ("[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth.").

Mendoza argues that the trial court's judgment erroneously states that a $100.00 fine was assessed against him. The State agrees. Accordingly, we modify the judgment to delete the fine. We sustain Mendoza's fourth issue.

## VII. CONCLUSION

We affirm the trial court's judgment as modified.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
29th day of August, 2024.